[No. 31663-0-I.   Division One.   May 1, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. ARTURO RODRIGUEZ-TORRES, *Appellant*.

---

[22]*See State v. Gaines*, 122 Wn.2d 502, 517, 859 P.2d 36 (1993).

*Richard Tassano* of *Washington Appellate Project*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Mark Stephen Saltvig, Deputy*, for respondent.

PEKELIS, J.* — Arturo Rodriguez-Torres (Rodriguez-Torres) appeals his conviction for possession with intent to deliver a controlled substance. He challenges the trial court's denial of his motion to suppress on the ground that the police officer exceeded the permissible scope of a *Terry*[1] search when he reached into Rodriguez-Torres' pocket, based

---

*This opinion was filed after the appointment of Chief Judge Rosselle Pekelis to the Washington State Supreme Court, but it was signed by Judge Pekelis prior to her appointment.

[1] *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

on his fear that evidence was about to be destroyed. We affirm.

On July 18, 1992, Seattle Police Officer Michael Magee (Magee) was on routine bicycle patrol near Pike Place Market in Seattle, an area known for narcotics transactions. Because Magee has extensive specialized training in narcotics law enforcement, he is familiar with street narcotics transactions.

While on patrol, Magee saw Rodriguez-Torres and another individual standing across the street, each with their hands out. The officer observed the other individual hand money to Rodriguez-Torres, who was holding his left hand in a cupped fashion. The other individual picked an item out of Rodriguez-Torres' left hand and was looking at it.

Believing that he was witnessing a narcotics transaction, Magee approached the two men to investigate. As the officer crossed the street, someone yelled out "Police!" In response, the unidentified man grabbed his money back from Rodriguez-Torres, dropped the item he had been inspecting on the ground and walked away.

Then Rodriguez-Torres bent over and picked up something off the ground with his left hand and put it into his left front pants pocket. Rodriguez-Torres kept his hand in his pocket and started to hurry away from the scene. As Magee followed, Rodriguez-Torres repeatedly glanced back over his shoulder toward the officer, all the while keeping his left hand in his pocket. In the past, Magee observed instances where drugs concealed in pockets were surreptitiously dispersed through holes cut in the pockets or else sloughed off by quick hand movements.

Magee followed Rodriguez-Torres for a distance, and when he felt safe, he stopped Rodriguez-Torres by grabbing his two arms from behind and having him slowly place his hands across one another on the wall. The officer then advised Rodriguez-Torres that he was about to put his hand into his left front pants pocket.

From the left pocket, the officer recovered a brown paper wrapping containing packaged substances appearing to be

narcotics, including seven bindles of a white, flaky powder. The officer then arrested Rodriguez-Torres for possession of narcotics. The substance found on Rodriguez-Torres was later analyzed by a state crime lab forensic scientist and found to contain cocaine.

Rodriguez-Torres was charged with possession with intent to deliver a controlled substance. He moved to suppress evidence of the cocaine found in his pocket on the ground that the search exceeded the scope of a valid *Terry* search. The trial court denied the motion, ruling that the search was not unconstitutional, stating, *inter alia*, that "[t]he furtive actions of the defendant after the attempted transaction was interrupted gave rise to a reasonable suspicion that he possessed evidence which was in danger of being concealed, destroyed or lost". Rodriguez-Torres was tried and found guilty as charged. This timely appeal follows.

Rodriguez-Torres contends that his rights under both the federal and state constitutions were violated when Officer Magee searched his pocket pursuant to a *Terry* stop. He argues that a *Terry* search is limited to a frisk designed to uncover weapons. Because Magee was not searching for weapons, Rodriguez-Torres contends that the search was illegal and the fruits of it should have been suppressed.

"The Fourth Amendment, made applicable to the States by way of the Fourteenth Amendment . . . guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' " *Minnesota v. Dickerson*, 508 U.S. 366, 124 L. Ed. 2d 334, 113 S. Ct. 2130, 2135 (1993) (quoting *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961)). Article 1, section 7 of the Washington Constitution states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."

Warrantless searches and seizures are presumed to be per se unreasonable, "subject only to a few specifically established and well delineated exceptions." ' " *Dickerson*, 113 S.Ct. at 2135 (quoting *Thompson v. Louisiana*, 469 U.S. 17, 20, 83 L. Ed. 2d 246, 105 S. Ct. 409 (1984)); *see also State v. Leach*, 113

Wn.2d 735, 738, 782 P.2d 1035 (1989). In this case, the State relies solely on the exception delineated in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

In *Terry*, the court expressed concern for the safety of officers conducting investigatory stops. It noted that in light of the danger to officers posed by guns and knives,

> we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Terry*, at 24. It, therefore, held that in conjunction with a *Terry* stop, officers are empowered to conduct a search designed to discover potential weapons. *Terry*, at 29.

Here, however, Officer Magee never suggested that he was concerned that Rodriguez-Torres was armed. Indeed, he admitted that his search was designed to find narcotics. The trial court, in turn, upheld the search on the basis that Magee had a reasonable suspicion that evidence was about to be destroyed or lost.

On its face, this rationale is inconsistent with *Terry*. The State, however, relying on *State v. Pressley*, 64 Wn. App. 591, 825 P.2d 749 (1992), contends that the search was proper. Specifically, the State cites the portion of *Pressley* which states that "[w]here the actions of the person being detained give rise to a reasonable suspicion that the person possesses evidence which is in danger of being destroyed or lost . . . the investigating officer may take reasonable action, including seizure of evidence, consistent with the initial stop to further investigate and to protect the possible evidence." *Pressley*, at 598.

The State, however, fails to recognize that the *Pressley* court was careful to hold that only when the actions of the person being detained give rise to probable cause or satisfy the "plain view" doctrine is a more intrusive search justified. *Pressley*, at 598. This limitation is compelled by the *Terry*

decision itself. When discussing the scope of a permissible search made as part of a *Terry* stop, the *Terry* court stated that

> [s]uffice it to note that such a search, unlike a search without a warrant incident to a lawful arrest, *is not justified by any need to prevent the disappearance or destruction of evidence of crime.* The *sole* justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

(Citation omitted. Italics ours.) *Terry*, at 29.

In a recent case, the United States Supreme Court reiterated the very narrow scope of a *Terry* search. In *Minnesota v. Dickerson, supra,* two officers did a patdown of a suspect during the course of a *Terry* stop. The patdown revealed no suspected weapons. *Dickerson*, 113 S. Ct. at 2133.

One of the officers testified, however, that during the patdown, he felt a small lump in the suspect's front pocket which he squeezed with his fingers. Based on this, he decided it felt like a lump of crack cocaine in cellophane. *Dickerson*, 113 S. Ct. at 2133. The officer seized the matter, which turned out to be cocaine, and arrested the suspect. *Dickerson*, 113 S. Ct. at 2134.

The *Dickerson* Court reiterated that when officers stop an individual in order to conduct an investigation, they may conduct a patdown search for weapons. " 'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence. . . .' " *Dickerson*, 113 S. Ct. at 2136 (quoting *Adams v. Williams*, 407 U.S. 143, 146, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972)).

The Court went on to hold, however, that under certain circumstances, an officer may seize contraband detected during a lawful *Terry* search. *Dickerson*, 113 S. Ct. at 2136. If, without further investigation, a *Terry* patdown itself gives rise to *probable cause* to believe that an object is contraband, then it can be seized. *Dickerson*, 113 S. Ct. at 2136-37. It concluded, however, that "the police officer in this case overstepped the bounds of the 'strictly circumscribed' search for

weapons allowed under *Terry.*" *Dickerson,* 113 S. Ct. at 2138 (quoting *Terry,* 392 U.S. at 26).

When the officer first felt the lump in the suspect's front pocket, he did not suspect it was a weapon and at the same time, he did not have probable cause to believe it was cocaine. He determined it was cocaine only after he squeezed the lump. *Dickerson,* 113 S. Ct. at 2138. This more intrusive search of squeezing the lump did not have a proper predicate. The Court, therefore, concluded that the search should have ended once the officer was certain that the lump was not a weapon. *Dickerson,* 113 S. Ct. at 2138-39.

As *Terry* and *Dickerson* make clear, Officer Magee's search of Rodriguez-Torres' pocket cannot be justified under *Terry.* The fact that he had a reasonable suspicion that evidence was about to be destroyed alone does not change this result. Only if the "plain view" doctrine is satisfied or probable cause exists can an officer do a more intrusive search. *Dickerson,* at 2136-37; *State v. Dorsey,* 40 Wn. App. 459, 473, 698 P.2d 1109, *review denied,* 104 Wn.2d 1010 (1985).

■ ■ We conclude that Magee had probable cause to believe that Rodriguez-Torres had committed a crime.[2] An officer's determination that probable cause is absent is not dispositive; the test for probable cause is objective. *State v. Goodman,* 42 Wn. App. 331, 337, 711 P.2d 1057 (1985), *review denied,* 105 Wn.2d 1012 (1986).

> Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed. Probable cause is not a technical inquiry. A bare suspicion of criminal activity, however, will not give an officer probable cause . . ..

(Footnotes omitted.) *State v. Terrovona,* 105 Wn.2d 632, 643, 716 P.2d 295 (1986).

■ Here, Magee's observations and expertise provided probable cause to conclude that a drug offense had been

---

[2]In its brief, the State does not argue that probable cause existed. Even if the State's omission is viewed as a concession, we would not be bound by it if it is legally erroneous. *State v. Lewis,* 62 Wn. App. 350, 351, 814 P.2d 232, *review denied,* 118 Wn.2d 1003 (1991).

committed. *State v. Knighten*, 109 Wn.2d 896, 899, 748 P.2d 1118 (1988) (holding that the determination of probable cause "takes into consideration the special experience and expertise of the arresting officer") (quoting *State v. Fricks*, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979)). Magee observed Rodriguez-Torres' companion give him money and Rodriguez-Torres show him an object which he kept cupped in his hand. This transaction occurred in an area well known for narcotics sales. Someone yelled "Police" when the officer approached, and Rodriguez-Torres and his companion left the scene quickly.

Under these facts, Magee had probable cause to believe Rodriguez-Torres had committed the offense of possession with intent to deliver a controlled substance. *See State v. White*, 76 Wn. App. 801, 804-05, 888 P.2d 169 (1995). Therefore, we conclude that the search was valid as incidental to Rodriguez-Torres' arrest. *See State v. Ward*, 24 Wn. App. 761, 765, 603 P.2d 857 (1979) (holding that when probable cause exists at the time of the search, a search can be considered incidental to arrest, even if it occurs shortly before the arrest), *review denied*, 93 Wn.2d 1019 (1980), *cert. denied*, 449 U.S. 984 (1980). Accordingly, Rodriguez-Torres' conviction is affirmed.

BAKER, C.J., and AGID, J., concur.