927 P.2d 227 (1996)
130 Wash.2d 711
The STATE of Washington, Respondent,
v.
Kevin Christopher GRAHAM, Petitioner.
No. 63705-9.
Supreme Court of Washington, En Banc.
Argued September 26, 1996.
Decided December 5, 1996.
*228 Colleen E. O'Connor and Nielsen & Acosta, Eric Broman, Seattle, for petitioner.
Norm Maleng, King County Prosecutor, Catherine Hendricks, Theresa L. Fricke and Peter Goldman, Deputy County Prosecutors, Seattle, for respondent.
GUY, Justice.
The juvenile defendant in this appeal challenges his convictions for obstructing a public servant and for resisting arrest. He argues that a uniformed off-duty police officer who is working as a private security guard cannot be a "public servant" who is performing "official duties" for purposes of the obstructing statute, and is not a "peace officer" for purposes of the resisting arrest statute.
We affirm the convictions and hold that a police officer, whether on duty or off duty, is a public servant and a peace officer. Whether the officer is identified as such and is engaged in performing official duties at any given time is a question of fact.

FACTS
On August 10, 1993, two off-duty Seattle police officers, Kim Bogucki and Michelle Hackett, were working as security guards for the Denny Regrade Council, an organization of businesses in a downtown area of Seattle.
The officers were employed by the Seattle businesses to patrol a 3-block area between *229 Stewart and Lenora Streets and Third and Fourth Avenues, an area in which the officers testified there was a large volume of illegal drug transactions. The officers, who patrolled the area on bicycles, were in uniform.[1] Both were armed.
At approximately 11 p.m., Officers Bogucki and Hackett turned a corner from Stewart Street onto Third Avenue and almost ran into the 17-year-old defendant, who was walking southbound on Third Avenue.
The officers observed that the defendant was carrying a large wad of money and was separating the $20 bills from the $10 and smaller bills. Officer Hackett testified that she was looking at the defendant's hands and that it looked like he had a small plastic baggie with a white substance in it in his left hand. It appeared to Officer Hackett that the baggie contained rock cocaine. Officer Bogucki testified that the defendant was within 3 feet of her and that she saw a large amount of currency in wads and a small plastic cellophane wrapper containing white rocks, which she suspected were cocaine. Both officers had extensive experience and training in narcotics operations.
When the defendant saw the officers, he appeared startled. He looked very nervous and he shoved his hands into his front pants pockets and started across the street against the "Don't Walk" signal. Believing the defendant was in possession of a controlled substance, the officers told the defendant to come back to the curb. When he did not return voluntarily, the officers brought him back to the sidewalk. The defendant still had his hands in his pockets and the officers asked him to remove his hands from his pockets, for "officer safety" reasons. He refused, so the officers slowly took his hands from his pockets. The defendant was sweating profusely, looking around, and moving his feet. He appeared very nervous. His behavior led the officers to believe that what they had seen actually was narcotics. The officers then took money and other items out of the defendant's pockets. They removed $296, a pager, a birth certificate and other papers from his pockets and spread these items on the ground. Officer Hackett believed the defendant was about to run and asked her partner, who was kneeling on the sidewalk examining the items, to stand. She testified that the defendant asked why she needed the other officer to stand, and she stated, "Because I think you have dope on you." The defendant then ran from the officers. The defendant believed the two to be police officers and testified that he ran because he had an outstanding warrant for a traffic violation.
The officers yelled "Stop[!] police," but the defendant continued to run from the officers for about 4 blocks and was caught as he tried to get into a taxi. The defendant resisted by pulling away and flailing, kicking and screaming at the officers. The officers felt it was necessary to shackle the defendant.
The defendant was charged with obstructing a public servant in violation of former RCW 9A.76.020(3), and with resisting arrest in violation of RCW 9A.76.040. In a juvenile court fact-finding hearing, the defendant was found guilty of both offenses by the juvenile court commissioner.
The defendant appealed and the Court of Appeals affirmed in a partially published opinion. State v. Graham, 80 Wash.App. 137, 906 P.2d 992 (1995), review granted, 129 Wash.2d 1010, 917 P.2d 130 (1996). This court then granted the defendant's petition for review.

ISSUES
1. Is a police officer who is off duty and working for a private security company a "public servant" discharging her "official powers or duties" for purposes of the obstruction statute, and a "peace officer" for purposes of the resisting arrest statute, when the officer stops a person suspected of violating this state's drug laws?
2. If the off-duty police officers involved in this appeal were acting as police officers, rather than private security guards, did they *230 have probable cause to arrest the defendant under the facts of this case?

ANALYSIS

Status of Officers
The key issue in this appeal requires this court to interpret the meaning of two statutes. The first is the statute defining the crime of obstructing a public officer, former RCW 9A.76.020(3).[2] The second is the statute defining the crime of resisting arrest, RCW 9A.76.040(1).
Former RCW 9A.76.020(3) made it a misdemeanor to "knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers or duties." (Emphasis added.)
RCW 9A.76.040(1) provides: "A person is guilty of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from lawfully arresting him." (Emphasis added.)
The defendant argues that an off-duty police officer cannot, while privately employed as a security guard, also be a peace officer or public servant who is discharging his or her official duties.
A "peace officer" is any duly appointed city, county or state law enforcement officer. RCW 9A.04.110(15).
"Public servant" is defined in RCW 9A.04.110(22) as
any person other than a witness who presently occupies the position of or has been elected, appointed, or designated to become any officer or employee of government, including a legislator, judge, judicial officer, juror, and any person participating as an advisor, consultant, or otherwise in performing a governmental function[.]
The term "public servant" has been construed to include a uniformed police officer. State v. Lalonde, 35 Wash.App. 54, 58, 665 P.2d 421, review denied, 100 Wash.2d 1014 (1983). See also City of Mountlake Terrace v. Stone, 6 Wash.App. 161, 165, 492 P.2d 226 (1971) (term "public officer" is broad enough to include police officer). Generally, a police officer's status as a public servant does not end with his or her shift.
The Seattle Police Department Manual states:
Police officers at all times, on or off duty, shall accept the responsibilities imposed upon them by law as to their duties and authority. When within the boundaries of the City, they shall preserve the public peace, detect and arrest violators of the law, prevent crime, protect life and property, and enforce the criminal laws of the State of Washington and the ordinances of the City of Seattle.
Resp.'s Br. at 4 n. 2 (emphasis not in original).[3]
This rule is consistent with the common law. Under the common law, a police officer on "off-duty" status is "not relieved of the obligation as an officer to preserve the public peace and to protect the lives and property of the citizens of the public in general. Indeed, police officers are considered to be under a duty to respond as police officers 24 hours a day." 16A Eugene McQuillin, The Law of Municipal Corporations § 45.15, at 123 (3d *231 rev. ed.1992). See also State v. Wilen, 4 Neb.App. 132, 539 N.W.2d 650, 658 (1995).
The only reported Washington appellate decision discussing the authority of a police officer to make an arrest while off duty is State v. Brown, 36 Wash.App. 166, 672 P.2d 1268 (1983). In Brown, the Court of Appeals held that an off-duty police officer has the same authority as an on-duty officer to make arrests for misdemeanors committed in the officer's presence, and that it is unlawful to resist arrest by an off-duty officer who discloses his or her identity. In Brown the off-duty officer was at home asleep when he awoke, looked out the window and observed the defendant looking into a neighbor's car. The officer confronted the defendant, identified himself to the defendant as a police officer, and attempted to arrest the defendant. The defendant resisted by striking the officer and throwing bottles at him. The defendant was convicted of assault on a law enforcement officer and of resisting arrest. The court in Brown held that the assault statute under which the defendant was convicted
is designed to allow police officers to maintain a "peaceful and orderly custody", and in turn, "protect the public safety". The statute governing authority to arrest appears to have the same objectives. Prohibiting one who is committing a misdemeanor from resisting the arrest of one who identifies himself as a police officer is most likely to achieve those aims.... Requiring acquiescence maintains the peace in two ways. First, it prevents any violence between the officer and the individual. Second, it stops the criminal behavior. Granting off-duty officers authority to arrest equal to on-duty officers, thereby making it unlawful to resist their arrest, thus best achieves the goals of the relevant statutes.
Brown, 36 Wash.App. at 168-69, 672 P.2d 1268 (citations omitted). See also Goodwin v. State, 222 Ga.App. 285, 474 S.E.2d 84 (1996) (all law enforcement officers have the general duty to enforce the law and maintain the peace and they carry this duty 24 hours a day on and off duty), cert. denied, Oct. 18, 1996; Wilen, 539 N.W.2d at 658 ("it has been widely held that a police officer is not relieved of his or her obligation to preserve the peace while off duty"); State v. Robinson, 379 So.2d 712 (Fla.Dist.Ct.App.) (a full time police officer is authorized during off-duty hours at the discretion of his superior officers to carry firearms and to perform those law enforcement functions that he normally performs during duty hours), cert. denied, 388 So.2d 1117 (1980).
We hold that an off-duty police officer is a public servant, with the authority to respond to emergencies and to react to criminal conduct. The question here, then, is whether an off-duty officer can discharge his or her "official" duties at the same time the officer is working as a private security guard.
There is no Washington law on point. While other jurisdictions which have considered the issue are divided, most have held that the courts must look to the particular facts of any given case to determine whether the officer involved was acting on behalf of the private employer or, instead, was discharging his or her "official powers or duties" when the officer stopped or arrested the individual suspected of violating the law. Tapp v. State, 406 N.E.2d 296 (Ind.Ct.App. 1980) (it is the nature of the acts performed and not whether the officer is on or off duty, in or out of uniform, which determines whether the officer is engaged in the performance of his official duties); State v. Kurtz, 78 Ariz. 215, 278 P.2d 406 (1954) (determining factor is whether the officers were acting in vindication of the public right and justice or were they merely performing acts of service to their private employer); Robinson, 379 So.2d 712 (an officer's "off-duty" status is not a limitation upon his right to exercise police authority in the presence of criminal activity); In re Albert S., 106 Md. App. 376, 664 A.2d 476 (1995) (the question of whether a law enforcement officer was acting in the performance of his duties is a factual determination which is not settled by either the fact that the officer is off duty or is working as a private security guard; rather, the question is to be decided on the particular facts of each case); State v. Coleman, 224 Kan. 447, 580 P.2d 1329 (1978) (a plain-clothes, off-duty police officer working as a *232 store detective is a law enforcement officer performing an official duty when he identifies himself as a police officer to a suspected shoplifter and arrests the suspect for shoplifting); Williams v. State, 45 Wis.2d 44, 48, 172 N.W.2d 31 (1969) (once officer became aware of fight and took action to stop it, he was no longer off duty; stepping into the middle of a crowd of 50-60 people to break up a fight was no "personal frolic").
In Tapp, the Indiana court of appeals upheld a defendant's conviction for battery upon a police officer. The officer involved was off duty and working as a private security guard at a Sears store when he saw the defendant shoplift. The officer, who was not in uniform, identified himself as a police officer and stated, "[Y]ou're under arrest for shoplifting." The defendant refused to open her purse, and in the ensuing scuffle the defendant bit the officer on the arm. The court rejected the defendant's argument that the officer was acting as a private guard, not a police officer, at the time of the arrest, finding that a police officer's duties are not constrained by specific time or place limitations. Tapp, 406 N.E.2d at 301-02.
In contrast, the Georgia court of appeals in Goodwin, 474 S.E.2d at 86, held the officer involved in that case was not performing his official duties while employed as a private security guard. There the off-duty police officer was employed part time as a security guard for a hotel. Hotel management had instructed him to stop all vehicles entering the premises and ask whether the occupants were guests of the hotel. Upon stopping the defendant's vehicle, the officer noticed an odor of alcohol on the defendant. The officer called the police, who then arrested the defendant. The court rejected the defendant's argument that the stop was unlawful because it was not supported by a reasonable suspicion of criminal activity. In affirming the conviction, the Georgia court of appeals held that at the time of the stop the officer was not acting as a police officer but rather was acting in his capacity as hotel security officer. The court held that the officer was off duty, on private property, and had stopped the defendant's car not because there were specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct but solely because of his employer's legitimate instructions.
Other jurisdictions hold, as a matter of law, that an off-duty police officer employed as a private security guard never acts as a public servant who is discharging a public duty. People v. Corey, 21 Cal.3d 738, 581 P.2d 644, 147 Cal.Rptr. 639 (1978); Stewart v. State, 527 P.2d 22 (Okla.Crim.App.1974); People in Interest of J.J.C., 854 P.2d 801 (Colo.1993) (in order to prove defendant guilty under resisting arrest statute, state must prove the peace officer is either on duty or acting under color of official authority for the performance of a police service or function). See also State v. Palms, 592 S.W.2d 236 (Mo.App.1979) (defendant's conviction for wounding a police officer in the performance of his duties reversed because the officer, who was employed as a private security guard, was only a reserve officer, not assigned to active duty).
In Stewart, the Oklahoma court of appeals held that, "as a matter of law when an off-duty police officer accepts private employment and when engaged in this private employment he becomes a private citizen. Therefore to make a valid arrest he must comply with the law applicable to a citizen's arrest." Stewart, 527 P.2d at 24. But see Brooks v. State, 561 P.2d 137, 140 (Okla. Crim.App.1977) (distinguishing Stewart, the court held that any time a police officer, whether in uniform or not, takes it upon himself to enforce the law in order to maintain peace and order for the general benefit of the public, he is acting in the performance of his duties as a police officer).
In Corey, 21 Cal.3d 738, 147 Cal.Rptr. 639, 581 P.2d 644, the California supreme court relied on that state's statute regulating private security guards in determining that off-duty police officers employed as security guards are not engaged in the performance of an official duty. Unlike the Washington statute, California law prohibits an off-duty police officer working as a security guard *233 from wearing his police uniform or from indicating in any way that he is a police officer.[4]
In our view, public policy is furthered by the rule that a police officer is a public servant or peace officer who has the authority to act as a police officer whenever the officer reasonably believes that a crime is committed in his or her presence, whether the officer is on duty or off duty. This is particularly true when the officer is in uniform or when the officer is otherwise identified as a police officer. State v. DeSanto, 172 N.J.Super. 27, 410 A.2d 704, 705 (Ct.App.Div. 1980) (the police uniform has the same significance to the public whether the officer is technically on or off duty); Wilen, 539 N.W.2d at 660. Whether an off-duty officer employed as a private security guard is acting in the discharge of his official duties is a question of fact that must be resolved according to the circumstances of each case.
The defendant argues that permitting off-duty police officers employed as private security guards to perform official police duties in response to criminal behavior could result in a violation of federal and state constitutional rights protecting against unlawful search and seizure. However, if an off-duty officer conducts a search or performs an arrest pursuant to his or her authority as a police officer, the officer would be acting on behalf of the state and would, therefore, be required to comply with the constitution. See, e.g., In re Albert S., 664 A.2d at 484-85 (off-duty officer employed as security guard must comply with Fourth and Fourteenth Amendments when stopping and searching an automobile; whether state action exists for purposes of constitution in a given case is not measured by the primary occupation of actor, but by capacity in which he or she acts at the time in question); Goodwin, 474 S.E.2d at 86 (off-duty officer working as a security guard at a hotel was not acting as police officer when, pursuant to employer's instructions, he stopped each car driving on to the premises to ask whether the occupants were hotel guests; therefore officer was not required to comply with constitutional limitations).
In the present case, the officers involved were in uniform and were armed. Their job as security guards was to patrol the streets, not to arrest drug offenders. Each of the officers testified that she saw the defendant holding a large wad of money and a plastic bag containing white pebbles. The officers both had extensive experience and training in recognizing narcotics. Both believed the plastic bag contained cocaine and both believed they were witnessing a crime. They identified themselves as police officers and the defendant believed them to be police officers.
When the officers stopped the defendant, they stepped out of their roles as private security guards and into their roles as police officers. They were identified as police officers and their status as police officers was known to the defendant. The officers were acting as public servants who were discharging their official duties, for purposes of the obstructing statute, and as peace officers for purposes of the resisting arrest statute, at the time they were involved with the defendant.

Probable Cause to Arrest
The defendant argues that even if the officers involved here were acting as public servants in the discharge of their official duties and as peace officers, the officers lacked probable cause to arrest or exceeded the scope of a lawful investigative stop. Therefore, the defendant argues, the State was unable to prove an essential element of the crimesthat the officers were acting lawfully.
Under both the federal and state constitutions, probable cause is the objective standard by which the reasonableness of an arrest is measured. State v. Bonds, 98 Wash.2d 1, 8, 653 P.2d 1024 (1982), cert. denied, 464 U.S. 831, 104 S.Ct. 111, 78 L.Ed.2d 112 (1983); State v. Huff, 64 Wash. App. 641, 646, 826 P.2d 698, review denied, 119 Wash.2d 1007, 833 P.2d 387 (1992).
Probable cause exists where the facts and circumstances within the arresting officer's *234 knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed.
State v. Terrovona, 105 Wash.2d 632, 643, 716 P.2d 295 (1986). See also State v. Rodriguez-Torres, 77 Wash.App. 687, 693, 893 P.2d 650 (1995).
In determining whether probable cause to arrest in a narcotics case exists, the court must consider
"the totality of the facts and circumstances within the officer's knowledge at the time of the arrest. The standard of reasonableness to be applied takes into consideration the special experience and expertise of the arresting officer."
State v. Fore, 56 Wash.App. 339, 343, 783 P.2d 626 (1989) (quoting State v. Fricks, 91 Wash.2d 391, 398, 588 P.2d 1328 (1979)), review denied, 114 Wash.2d 1011, 790 P.2d 168 (1990).
In Fore, the defendant was charged with possession of marijuana with intent to manufacture or deliver. The trial court suppressed evidence seized incident to an allegedly unlawful arrest and the Court of Appeals reversed, holding that under the circumstances of the case probable cause to arrest the defendant existed and that the search, conducted incident to the arrest, was constitutionally valid. The circumstances existing at the time of the arrest which were considered by the Court of Appeals included the police officer's observation, through high-powered binoculars, that the defendant and another man exchanged small plastic bags containing brownish or greenish matter with passing motorists for what appeared to be folded currency. The officer also observed, through binoculars, the defendant take a large plastic bag from underneath the dashboard of his vehicle and remove smaller plastic packets containing a greenish material. The officer had special training in narcotics investigation and surveillance techniques and had made numerous undercover purchases of controlled substances. The officer knew about numerous complaints of drug transactions in the vicinity where the defendant was arrested.
The Court of Appeals in Fore held that the facts and circumstances, viewed in light of the officer's expertise and experiences, were sufficient to warrant a person of reasonable caution to believe that an offense had been committed. Fore, 56 Wash.App. at 344, 783 P.2d 626. The court also noted that "probable cause is not negated merely because it is possible to imagine an innocent explanation for observed activities." Fore, 56 Wash.App. at 344, 783 P.2d 626. Additionally, the court held that "absolute certainty by an experienced officer as to the identity of a substance is unnecessary to establish probable cause." Fore, 56 Wash.App. at 345, 783 P.2d 626.
In the present case, the officers involved both had extensive experience and training in dealing with narcotics. Officer Bogucki testified that she had been involved in more than 1,000 narcotics arrests during a 5-year period. Officer Hackett testified that she had made well over 1,200 felony drug arrests, with all but about 10 dealing specifically with rock cocaine. Both officers testified that they saw the defendant carrying a large amount of cash and a small packet containing what looked like rock cocaine.
The defendant's reaction when he saw the officers was to quickly conceal the contents of his hands and to hide it in his front pants pockets. He then ignored the officers' request to stop. He looked very nervous and was sweating profusely even though the temperature was cold to the officers. Furtive gestures, evasive behavior, and flight from the police are circumstantial evidence of guilt. State v. Baxter, 68 Wash.2d 416, 421-22, 413 P.2d 638 (1966) (flight is an element of probable cause); Huff, 64 Wash.App. at 647, 826 P.2d 698 (furtive movements are facts supportive of probable cause).
The facts and circumstances within the officers' knowledge were sufficient to cause a person of reasonable caution to believe the defendant possessed an illegal drug. They therefore had probable cause to arrest the defendant and were acting lawfully when they detained him.
Affirmed.
*235 DURHAM, C.J., and DOLLIVER, SMITH, JOHNSON, MADSEN, ALEXANDER, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] The trial court found that the officers "wore police bicycle patrol uniforms." The officers testified they were "in uniform" but did not specifically testify that it was a Seattle police officer uniform. The defendant believed them to be police officers.
[2] Former RCW 9A.76.020 was amended in 1994, Laws of 1994, ch. 196, § 1, in response to this court's opinion in State v. White, 97 Wash.2d 92, 640 P.2d 1061 (1982), which held RCW 9A.76.020(1) and (2) unconstitutionally vague. RCW 9A.76.020(3), the section involved in the present case, was held to be constitutional in State v. Lalonde, 35 Wash.App. 54, 665 P.2d 421, review denied, 100 Wash.2d 1014 (1983). The statute was again amended in 1995. Laws of 1995, ch. 285, § 33. The amended statute now reads:

(1) A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties.
(2) "Law enforcement officer" means any general authority, limited authority, or specially commissioned Washington peace officer or federal peace officer as those terms are defined in RCW 10.93.020, and other public officers who are responsible for enforcement of fire, building, zoning, and life and safety codes.
(3) Obstructing a law enforcement officer is a gross misdemeanor.
[3] This rule of conduct is not part of the record. However, the defendant does not challenge the accuracy of the rule, as set forth in the State's brief.
[4] RCW 18.170, Washington's statute regulating security guards, specifically exempts from its requirements any "sworn peace officer while engaged in the performance of the officer's official duties." RCW 18.170.020(2).