# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                           )
              Respondent, )
                           )
         v. )
                           )
ELIAS ANTHONY VAN VRADENBURG, )
                           )
              Appellant. )
                           )

No. 74974-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 6, 2017

APPELWICK, J. — Van Vradenburg was convicted of possession of a controlled substance. He challenges the trial court's denial of his motion to suppress evidence seized pursuant to a search warrant he claimed lacked probable cause. We affirm.

## FACTS

Based upon information from a citizen informant, the judge issued a search warrant on September 15, 2014, authorizing the search of Elias Van Vradenburg's vehicle, house, and any locked containers within the vehicle or house. The events that led up to the search warrant began on June 22, 2014, when police responded to a report of an assault with a firearm. Three witnesses reported to police that a man, driving a silver Nissan Rogue sport utility vehicle, had pointed a gun at the witnesses from his car. One of the three witnesses, Rhonda Douglas, told the

police that she knew the man and that his name was "Malakai," and he alternatively went by "Eli." The police were unable to locate the suspect at that time.

On August 24, 2014, Rhonda[1] asked the police about the prior incident from June 22. The officer who authored the affidavit in support of the warrant application states that he had heard the name "Malakai" from various narcotic and property crime suspects in recent weeks. This prompted him to reopen the case to identify "Malakai" for prosecution. Rhonda, who had been to the suspect's house previously, pointed out Van Vradenburg's house to the officer. In the driveway, there was a silver Nissan Rogue that the officer determined was registered to Van Vradenburg's wife. Through surveillance, police observed Van Vradenburg frequently leaving the house Rhonda identified, and driving the Nissan Rogue. The officer recorded Rhonda and another witness from the June 4 incident, William Owens, identifying Van Vradenburg from his photograph as the man they knew as Malakai, and the man who pointed the gun at them.

The officer also interviewed Rhonda's daughter, Shandra Douglas. He predominantly relied on the information from the informant, Shandra, in requesting the search warrant:

> Shandra is a known associate of Van Vradenburg, and a well-known narcotic user in Snohomish. Shandra has three arrests for theft, most recently on [June 4, 2014]. Shandra told me that she has rode [sic] with Van Vradenburg in the Nissan Rogue on numerous occasions to conduct narcotic transactions, most recently on or about [September 5, 2014]. She told me that Van Vradenburg is always armed with an unknown (make/model/type) pistol while in the vehicle and keeps it in the driver's door pocket. Shandra told me she

---

[1] We refer to Rhonda and Shandra Douglas by their first names for clarity. We intend no disrespect.

2

has spent [a] considerable amount of time in Van Vradenburg's residence . . . and seen [sic] the same pistol along with another non-descript pistol in various areas of the home. These occurrences have been since the assault in this case.

The affiant stated that based on training and experience, it was likely that Van Vradenburg still had the firearm used in the assault. The affiant also stated that the firearm was likely in Van Vradenburg's car, home, or in a locked container in the car or home.

The police obtained the search warrant on September 15, 2014. On September 22, 2014, before the search warrant was executed, the police submitted a supplemental affidavit and obtained a search warrant addendum. This expanded the timeframe of the search by seven days, and permitted the officers to seize the Nissan Rogue.

On executing the search pursuant to the warrant, the officer observed suspected narcotics in Van Vradenburg's home. He also saw scales he believed to be the type used for weighing narcotics, a large amount of cash, and unused plastic "baggies." The affiant used this information to obtain another search warrant addendum on September 24, 2014. The police then seized evidence of narcotics from Van Vradenburg's home.

Van Vradenburg was charged with possession of a controlled substance. Van Vradenburg moved to suppress the evidence, arguing that the search warrant lacked probable cause. The trial court held a hearing on Van Vradenburg's motion to suppress. The court found probable cause and denied the motion to suppress. At a stipulated bench trial, Van Vradenburg was convicted of the possession of a controlled substance. Van Vradenburg appeals.

DISCUSSION

Van Vradenburg argues that the trial court erred in denying his CrR 3.6 motion to suppress evidence. He argues that the search warrant[2] affidavit used to obtain the evidence did not establish probable cause for the search. He contends that the affidavit does not establish the informant's reliability and the police investigation did not corroborate the informant's tip, the affidavit does not establish the requisite nexus between the alleged assault and the place to be searched, and the warrant was stale.

We generally review the issuance of a search warrant only for abuse of discretion, giving great deference to the issuing judge or magistrate. State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). However, at the suppression hearing the trial court acts in an appellate-like capacity; its review, like ours, is limited to the four corners of the affidavit supporting probable cause. Id. Although we defer to the magistrate's determination, the trial court's assessment of probable cause is a legal conclusion we review de novo. Id.

I. Probable Cause for the Search Warrant

First, Van Vradeburg argues that the affidavit in support of the search warrant did not provide probable cause to search, because it did not satisfy the Aguilar-Spinell[3]i test. Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L.

---

[2] Van Vradenburg challenges the initial search warrant issued on September 15, 2014, and the search warrant addendum issued on September 22, 2014.

[3] Washington courts continue to follow the Aguilar-Spinelli test despite the United States Supreme Court's adoption of a "totality of the circumstances" test in Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). The Washington Supreme Court determined that the Gates test is inapplicable to article

Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed.2d 723 (1964). He argues that the affidavit failed to establish the informant's reliability and the police investigation failed to corroborate the informant's tip.

Both the federal and state constitutions protect individuals from unreasonable searches. U.S. CONST. amend. IV; WASH. CONST. art. I, § 7. A search warrant must be supported by probable cause that criminal activity is occurring or that contraband exists at a certain location. State v. Vickers, 148 Wn.2d 91, 108, 59 P.3d 58 (2002). Probable cause does not require certainty, but only sufficient facts and circumstances to justify a reasonable belief that evidence of criminal activity will be found. State v. Chenoweth, 160 Wn.2d 454, 475-76, 158 P.3d 595 (2007). Under RCW 10.79.015, a magistrate, when satisfied that there is reasonable cause, may issue a search warrant to search for and seize any evidence material to the investigation or prosecution of any felony. Chenoweth, 160 Wn.2d at 465. CrR 2.3 also requires the superior court issuing the search warrant to particularly describe the places of the search and the person or items to be seized. Chenoweth, 160 Wn.2d at 465.

II. Reliability of Citizen Informant

Van Vradenburg argues first that the affidavit fails to satisfy the credibility prong of the Aguilar-Spinelli test. When the affidavit relies on information from an informant, that information must satisfy the two-prong Aguilar-Spinelli test. State v. Jackson, 102 Wn.2d 432, 443, 688 P.2d 136 (1984). Under the Aguilar-Spinelli

---

I, section 7 of the Washington Constitution. See State v. Jackson, 102 Wn.2d 432, 440-43, 688 P.2d 136 (1984).

test, to establish probable cause for a search warrant, the supporting affidavit must demonstrate the informant's (1) basis of knowledge and (2) veracity. Vickers, 148 Wn.2d at 112. The veracity prong is satisfied if either (1) the informant's credibility is established, or (2) the facts and circumstances surrounding the information may reasonably support an inference that the informant is telling the truth. State v. Duncan, 81 Wn. App. 70, 76-77, 912 P.2d 1090 (1996). If either or both parts of the test are deficient, probable cause may yet be satisfied by independent police investigation corroborating the informant's tip. Vickers, 148 Wn.2d at 112.

Here, Van Vradenburg argues that the informant, Shandra, lacked reliability because she was a "well-known criminal" with a pending criminal charge or investigation and was therefore motivated by self-interest. However, since the informant is not anonymous in this case, the Aguilar-Spinelli does not directly apply. See State v. Hett, 31 Wn. App 849, 851, 644 P.2d 1187 (1982) (holding that the Aguilar-Spinnelli test does not control where the informant is identified and also the principal affiant); see also State v. O'Connor, 39 Wn. App 113, 120-21, 692 P.2d 208 (1984) (stating that Aguilar/Spinelli strictures were aimed primarily at unnamed informants). The State's burden is relaxed when there is a named citizen informant. State v. Tarter, 111 Wn. App. 336, 340, 44 P.3d 899 (2002).

Chenoweth is instructive to our analysis. 160 Wn.2d at 482-83. There, the court held that a named informant's criminal history, included in the affidavit for the search warrant, did not preclude the magistrate from crediting the informant's information. Id. at 482. Chenoweth is similar to this case in which the informant does not neatly fit into the category of "citizen informant" under the Aguilar-Spinelli

6

test. Id. There, the court recited several factors that may establish the informant's reliability. Id. at 482-83. Those factors are (1) an informant's willingness to identify himself, (2) statements made against the informant's penal interest, and (3) additional facts and circumstances relevant to the judge's assessment of the informant's veracity. Id. at 483.

The affidavit in this case relied on information from Shandra, an identified informant with a criminal history corroborating another witness, her mother. We analyze Shandra's credibility with the factors from Chenoweth. 160 Wn.2d at 483.

Under the first factor, Sandra gains credibility because she was a named informant whose identity had been verified by the police. Merely providing a name to police is not sufficient to credit an informant, but if police have verified an informant's identity, it is a strong indicator of reliability. See Chenoweth, 140 Wn.2d at 483; see also Duncan, 81 Wn. App. at 77 (finding that informant's reliability was not established where police did not check her identity, address, phone number, employment, residence, or family history). Here, the affidavit provides sufficient facts to infer that Shandra's identity has been confirmed. The affiant states that Shandra has three recent arrests, cites the date of the most recent arrest, and relays that Shandra is the daughter of another witness, Rhonda.

Under the second factor, Shandra gains credibility because her statements were against her penal interest. The affidavit states, "Shandra told me that she has rode [sic] with Van Vradenburg in the Nissan Rogue on numerous occasions to conduct narcotic transactions, most recently on or about [September 5, 2014]." Statements against penal interest are intrinsically reliable because a person is

7

unlikely to make a self-incriminating admission unless it is true. Chenoweth, 140 Wn.2d at 483.

Under the third factor, the judge had reason to be skeptical of Shandra's credibility because she corroborated information that her mother, Rhonda, had given the police. In the initial incident reported to the police, Rhonda and other witnesses stated that a known male, driving a Nissan Rogue, had pointed a pistol at them. Shandra corroborated this information by telling the police that she rode with Van Vradenburg in the Nissan Rogue on numerous occasions and that he is "always armed" with a pistol.

Another fact lessening her credibility was her criminal history. Generally, criminal informants are considered less trustworthy than private citizen informants due to the greater likelihood that they are either involved in the crime or otherwise motivated by self-interest. See State v. Rodriguez, 53 Wn. App. 571, 576-577, 769 P.2d 309 (1989).

Citing Tarter, 111 Wn. App. 336, Van Vradenburg also argues that Shandra lacked reliability because she provided police with information that lacked specificity. In Tarter, owners and operators of a motel informed police that Tarter was selling drugs from her motel room. Id. at 338. They told police that Tarter had received 20 calls in her room in less than an hour, numerous people had come in and out of the room, and that people from the room frequently crossed the street for brief encounters. Id. The court found that these facts were sufficient to find probable cause for the search, even though they described lawful acts, and each fact individually would not be sufficient. Id. at 340-42. In this case, Shandra

described to police her detailed personal observations of Van Vradenburg's criminal activity. She told police she had been with Van Vradenburg "on numerous occasions to conduct narcotic transactions." She stated that she has "spent [a] considerable amount of time in Van Vradenburg's residence." She told police that Van Vradenburg is "always armed" with the pistol in his vehicle, and that she has seen the same pistol and another gun in various areas of the home.

Shandra's willingness to identify herself and consent to an interview with the police, her statements against penal interest, the facts that she is a "known associate of Van Vradenburg, and a well-known narcotic user," and her level of detail provide an adequate basis for crediting her information. On these facts and circumstances a trier of fact could find Shandra reliable to establish probable cause for the search. See Neth, 165 Wn.2d at 182-83. Thus, the trial court did not err in concluding there was sufficient evidence to find the informant reliable to establish probable cause.[4]

### III. Nexus Between Criminal Activity and Place to be Searched

Next, Van Vradenburg argues that even if the affidavit established probable cause that Van Vradenburg committed the assault, the search warrant still fails, because it lacked a nexus between the crime and Van Vradenburg's home. Van

---

[4] Under the Aguilar-Spinelli test, if the informant lacks either basis of knowledge or veracity, probable cause may yet be established by independent police investigation. Jackson, 102 Wn.2d at 438. The police investigation must corroborate the tip, to the extent that it supports the missing elements of the test. Id. We find no error in the trial court's conclusion that the informant had a basis of knowledge and was credible sufficient to establish probable cause for the search. Therefore, we do not reach the issue of whether police sufficiently corroborated the information through investigation.

Vradenburg argues that the affidavit did not establish that evidence of the assault was at his home.

Van Vradenburg relies on State v. Thein, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). In Thein, the court held that an affidavit must provide a sufficient basis in fact from which to conclude evidence of illegal activity will likely be found at the place to be searched. Id. at 147. There, the court found there was insufficient probable cause because there was not any evidence that linked the suspect's alleged drug dealing to his residence. Id. at 150-51. And, the court held that generalized statements from officers about the common habits of drug dealers lacked specific facts needed to link such illegal activity to the residence to be searched. Id. at 148-49.

This case differs from Thein, because here there were sufficient facts for probable cause that the item to be seized, the gun used in the reported assault, would be found at Van Vradenburg's home. The affidavit included the informant's tip that she had seen two different guns, including the one that was believed to be used in the assault, in Van Vradenburg's home. The affiant stated, "Shandra told me she has spent [a] considerable amount of time in Van Vradenburg's residence . . . and seen [sic] the same pistol along with another non-descript pistol in various areas of the home." Shandra's statement is direct evidence that linked the item to be seized and Van Vradenburg's home.

Van Vradenburg argues that Shandra's statement about the gun is unreliable because it lacks specificity. He contends that her statements are insufficient to establish a nexus between Van Vradenburg's home and evidence of

the alleged assault. The affiant states that the incidents Shandra describes "have been since the assault in this case." That is enough for a finding of probable cause, because it is grounded in fact, supporting his continued possession of the weapon used. See State v. Graham, 130 Wn.2d 711, 725, 927 P.2d 227 (1996) (finding that personal observations combined with an officer's experience and expertise are sufficient to find probable cause). A reasonable judge could determine from this information that evidence of the criminal activity, the alleged assault with a weapon, could be found at the home. The trial court did not err in determining that Shandra's statements to police established probable cause to search Van Vradenburg's home.

IV. Timeliness of Search Warrant

Finally, Van Vradenburg argues that if there is a nexus between the alleged crime and Van Vradenburg's residence, the warrant still failed because it was stale. The facts set forth in the affidavit must support the conclusion that the evidence is probably at the premises to be searched at the time the warrant is issued. State v. Lyons, 174 Wn.2d 354, 360, 275 P.3d 314 (2012).

In Lyons, the court held that, because the affidavit did not relate when the informant observed marijuana growing on the property, it did not provide sufficient support for a finding of timely probable cause. Id. at 368. The Lyons court noted that some time passes between the observations of criminal activity and the presentation of the affidavit to the magistrate, and the magistrate must decide whether the passage of time is so prolonged that the information is stale. Id. at 360-61. The magistrate makes this determination based on the circumstances of

11

each case, considering factors such as the nature and scope of the suspected activity. Id. at 361.

Here, Van Vradenburg argues that Shandra's statements to police did not indicate any specific date for when she saw the gun inside Van Vradenburg's home. He also argues that the warrant was stale because police obtained the search warrant after over three months had passed since the assault. The affidavit stated "[Shandra] told me that Van Vradenburg is always armed with an unknown (make/model/type) pistol while in the vehicle and keeps it in the driver's door pocket." It also stated that, since the assault, Shandra had observed Van Vradenburg with the gun used in the assault and another gun in various areas of his home. Based on these facts, it was reasonable for the judge to determine that Van Vradenburg would continue to have the gun with him or in his home.

The affidavit provided sufficient evidence for the judge to find Sandra reliable, to establish a nexus between evidence of the alleged assault and Van Vradenburg's home, and was still timely when the warrant was issued. Therefore, the trial court did not err in denying the motion to suppress evidence.

The State did not request appellate costs, and we do not award costs pursuant to RAP 14.2.

We affirm.

WE CONCUR:

12