[No. 22579-1-I. Division One. December 18, 1989.]

THE STATE OF WASHINGTON, *Appellant,* v. ERSKINE
C. FORE, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *Carol Spoor, Deputy,* for appellant.

*Elaine Winters* of *Seattle–King County Public Defender Association,* for respondent.

SWANSON, J.—The State of Washington appeals from an order suppressing evidence seized incident to an allegedly unlawful arrest. The State contends that the arresting officer had probable cause to arrest the respondent, thereby rendering the subsequent searches lawful.

Erskine C. Fore was charged with possession of marijuana with intent to manufacture or deliver. Prior to trial, Fore moved to suppress evidence seized incident to his arrest, *i.e.,* a green vegetable matter cigarette, seized from his person, and a large plastic baggie containing smaller plastic packets of green vegetable matter, seized from a vehicle.

At the suppression hearing, Seattle Police Officer Dale Williams, a 12–year veteran, testified that he was in Magnuson Park looking for drug transactions at about 1:15 p.m. on August 11, 1987. Williams was aware of numerous complaints regarding drug transactions in the park, but he was not investigating any specific complaint received on that day. Williams, who was assisted by Officer Sicilia, was concealed in a wooded area on a hill in the southwest corner of the park. He was observing with "17 x 40 Sears zoom focus" binoculars, which, according to Williams, magnify objects by a power of 15. Williams estimated that he had initiated some 80 arrests in the past 6 years as the result of observations with binoculars.

While looking through the binoculars, Williams' attention was drawn to a blue Ford Ranger pickup truck parked below. He observed "two males . . . that seemed to be outside of the vehicle and just seemed to be hanging around, I guess you could say." Williams recognized one of the men, respondent Fore, from a non–drug related encounter in the park. The other man was a Mr. Reber. Williams then observed the following:

> Mr. Fore went to a passenger side of a navy blue Volkswagen Scirocco that had entered the park and this was at approximately 1:15 where he made what appeared to be a transaction.
>
> . . . .
> He walked up to the passenger side of the car and pulled out a small plastic bag out of his left pants pocket and he handed it to an Asian female who was in the passenger seat in the vehicle and she gave Mr. Fore what appeared to be green paper currency back.
>
> . . . .
> [Then] he took the money with his left hand and his right hand was holding a Big Gulp cup and he took the money and put it in his left–rear pants pocket.
>
> And then shortly thereafter there was another transaction between Mr. Fore and what appeared to be a clean–cut white male driving a brown Chevrolette [sic] pickup . . . and appeared to be the same type of a deal where Mr. Fore dealt through the open passenger door. The subject pulled a baggie from his left pants pocket, handed it in and received money back which he put back into his left–rear pants pocket.

Report of Proceedings, at 10–11. Williams also observed Reber carry out what appeared to be a transaction with another vehicle that had entered the park.

Williams then watched Fore go to the passenger side of the Ford Ranger and reach into the dashboard area. Fore removed "a larger kind of like a freezer baggie or large sandwich bag that contained what appeared to be a number of smaller packets with green vegetable matter in it." Fore took out several of the smaller packets and replaced the larger baggie somewhere into the "dashboard area."

At this point, Williams decided to stop the person who had appeared to purchase something from Reber, confiscate the purchase, and then arrest Fore and Reber. As Officers Williams and Sicilia returned to their vehicle, they received

a radio request to assist another undercover narcotics team operating in the park. While driving into the park, Williams saw the blue Ranger, containing Fore, drive out. After confirming by radio that their assistance was not necessary, the officers turned around and drove out of the park after the Ranger pickup.

A short distance outside of the park, the officers discovered the vehicle in the parking lot of a small market. Fore was at the pay telephone; Reber stood near the doorway of the store. The record does not indicate how far away the two men were standing from the Ranger pickup truck. Less than 5 minutes had elapsed since the officers left their observation post.

The officers immediately arrested Fore and Reber. A search of Fore's person produced what appeared to be a hand–rolled marijuana cigarette. Fore was handcuffed and placed in the patrol car. Officer Williams then went to the passenger side of the Ranger, reached under the dashboard behind the glove box, and removed a large plastic bag containing smaller plastic packets of greet vegetable matter.

In addition to detailing his observations of Fore, Officer Williams testified that he had attended training classes devoted to the identification of controlled substances and to narcotics investigation and surveillance techniques. Williams had "been doing or working with street narcotics" for about 7 years and had purchased "almost all types of controlled substances" around the city. Williams further stated that he was familiar with methods used for drug transactions in Magnuson Park, having made about eight undercover "buys" in the park. Williams then described the "basic scenario" of a drug transaction in Magnuson Park.

At the conclusion of the suppression hearing, the trial court conceded that Officer Williams had "more than a suspicion" that "there was a drug buy that was going down." Nonetheless, the trial court concluded that probable cause to arrest Fore did not exist, primarily because Officer Williams was unable to identify with any certainty the substance that was being exchanged during the transaction.

Because the arrest was invalid, the trial court ruled that the evidence seized during the subsequent search of the defendant and the vehicle was unlawfully obtained. The trial court further concluded that even though Fore may have been properly detained for investigatory purposes, the subsequent searches exceeded the scope of a valid *Terry* stop. The defense's motion to dismiss was then granted. Findings of fact and conclusions of law were eventually entered on March 6, 1989.

 We agree with the State that the trial court erred in concluding that Officer Williams lacked probable cause to arrest Fore. Probable cause exists

> where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed.

*State v. Terrovona,* 105 Wn.2d 632, 643, 716 P.2d 295 (1986). This determination rests

> on the totality of facts and circumstances within the officer's knowledge at the time of the arrest. The standard of reasonableness to be applied takes into consideration the special experience and expertise of the arresting officer.

(Citation omitted.) *State v. Fricks,* 91 Wn.2d 391, 398, 588 P.2d 1328 (1979). Probable cause

> does not emanate from an antiseptic courtroom, a sterile library or a sacrosanct adytum, nor is it a pristine "philosophical concept existing in a vacuum," but rather it requires a pragmatic analysis of "everyday life on which reasonable and prudent men, not legal technicians, act."

(Citation omitted.) *United States v. Davis,* 458 F.2d 819, 821 (D.C. Cir. 1972) (quoting *Bell v. United States,* 254 F.2d 82 (D.C. Cir. 1958) and *Brinegar v. United States,* 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949)).

Here, the determination of probable cause encompassed the following circumstances: During a short period of time, Officer Williams observed three transactions in which the defendant and another man exchanged small plastic bags containing brownish or greenish matter with passing motorists for what appeared to be folded currency.

Williams' view of the transactions was clear and enhanced with high–power binoculars, which permitted a precise and detailed description of the exchanges and participants. Williams also saw Fore go up to the nearby Ranger, take out a large plastic bag from underneath the dashboard, and then remove smaller plastic packets containing green matter.

Williams had special training in narcotics investigation and surveillance techniques and had made numerous undercover purchases of controlled substances. In addition to his general training and experience, Williams also knew about numerous complaints of drug transactions in Magnuson Park and had made a sufficient number of undercover purchases in the park to permit him to describe a "basic scenario" for such transactions that corresponded reasonably closely to his observations of the respondent.

■ Viewed in light of Officer Williams' expertise and experience, the facts and circumstances were sufficient "to warrant a person of reasonable caution in a belief" that an offense had been committed. Although probable cause is not negated merely because it is possible to imagine an innocent explanation for observed activities, we are hard pressed to conceive of any innocent explanation for the circumstances observed by Officer Williams. *See* 1 W. LaFave, *Search and Seizure* § 3.2(e), at 595 (2d ed. 1987).

The sole case cited by the respondent in support of the trial court's decision, *State v. Poirier,* 34 Wn. App. 839, 664 P.2d 7 (1983), is distinguishable. In *Poirier,* police officers observed the defendant and another man exchange what appeared to be white envelopes or packages in a restaurant parking lot. A subsequent search of the packages revealed that they contained cocaine and money. This court held that these circumstances were insufficient to establish probable cause to arrest the defendant for possession of cocaine:

[A]n exchange between two persons unknown to the arresting officers of white envelopes or packages in plain view in an open

parking lot, not itself known for frequent drug transactions, does not establish probable cause to arrest.

*Poirier,* at 843; *cf. People v. Oden,* 36 N.Y.2d 382, 329 N.E.2d 188 (1975) (mere passing of glassine envelope between unknown persons in neighborhood with high crime rate, unsupplemented by additional relevant behavior or circumstances, does not constitute probable cause). In the instant case, however, Officer Williams saw substantially more than a single incident involving two unknown parties exchanging unknown parcels.

■ In concluding that no probable cause to arrest existed, the trial court appears to have placed excessive emphasis on Officer Williams' testimony that he could not identify with certainty the materials that Fore was exchanging with passing motorists. However, absolute certainty by an experienced officer as to the identity of a substance is unnecessary to establish probable cause. *See generally* 2 W. LaFave § 3.6(b). Here, the suspicious circumstances surrounding the exchanges, not the officer's ability to identity the substance, constituted the primary basis for the probable cause determination. *Cf. United States v. Rosario,* 638 F.2d 460, 462 (2d Cir. 1980) ("A plastic bag which contains a substance that looks like cocaine, which is carried furtively to a car containing two men at 11:00 p.m., and which is displayed for inspection by the two men, is not likely to contain camphor balls or white mints."), *cert. denied,* 450 U.S. 1000 (1981). Under the circumstances of this case, the probable cause determination would not have been different had it turned out that the respondent was selling postage stamps or some other innocent substance to passing motorists. *Cf. State v. Seagull,* 95 Wn.2d 898, 632 P.2d 44 (1981) (experienced officer's misidentification of a tomato plant as marijuana did not negate probable cause to support issuance of search warrant).

Because there was probable cause to arrest, the subsequent search of Fore that produced what appeared to be a hand–rolled marijuana cigarette was also valid as a search incident to an arrest. *See generally State v. White,* 44 Wn.

App. 276, 722 P.2d 118, *review denied,* 107 Wn.2d 1006 (1986).

The State next contends that because probable cause to arrest existed, the search of the Ford Ranger pickup, incident to the arrest, was also valid. Fore responds that even with probable cause to arrest, the subsequent search exceeded the scope of a valid vehicle search incident to an arrest because he was not arrested in or near the vehicle.

In *State v. Stroud,* 106 Wn.2d 144, 720 P.2d 436 (1986), our Supreme Court adopted a "bright–line" test for analyzing the proper scope of an automobile search incident to an arrest. In *Stroud,* police observed a vehicle parked next to an opened vending machine outside a closed gasoline station. The car's engine was running and the headlights were on. One defendant stood next to the vending machine; the other defendant stood "in the swing of the open passenger door . . .". *Stroud,* at 145. Both defendants were arrested, handcuffed, and placed in the back of the patrol car. After then observing a weapon on the backseat of the defendants' vehicle, an officer searched the passenger compartment. *Stroud,* at 146.

Weighing the State's legitimate interest in preserving evidence, concern for the safety of law enforcement officers, and the heightened privacy protection afforded by our state constitution, the court upheld the vehicle search and set forth the following "bright–line" rule:

> *During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car,* officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant.

(Italics ours.) *Stroud,* at 152 (overruling in part *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983), which permitted a warrantless automobile search incident to an

arrest only to remove weapons that an arrestee might use to resist arrest or escape and to prevent destruction by the arrestee of evidence of the crime for which he or she was arrested).

■ Fore asserts that *Stroud* is inapplicable to the facts here because he was outside of the vehicle when police arrived and because there was no possibility that he might reach the vehicle to obtain a weapon or destroy evidence. However, even though the rationale for the *Stroud* "bright–line" rule rests in part on traditional justifications that a suspect might easily grab a weapon or destroy evidence, the validity of a *Stroud* search does not depend on an arrestee being in the vehicle when police arrive or on the physical ability of an arrestee to reach into the vehicle. *Stroud,* at 152; *see also State v. Fladebo,* 113 Wn.2d 388, 779 P.2d 707 (1989) (upholding search of purse removed from defendant's vehicle after defendant had been placed in patrol car). In *Stroud,* neither of the defendants was in the car when police arrived, and both defendants were physically restrained in the police car before the vehicle search began.

Nonetheless, *Stroud* indicates that a valid vehicle search incident to an arrest requires a close physical and temporal proximity between the arrest and the search. *Cf. State v. Mercer,* 45 Wn. App. 769, 727 P.2d 676 (1986); *see generally* 3 W. LaFave § 7.1. Although the required degree of proximity is not subject to the same type of "bright–line" analysis as the general rule itself, subsequent decisions have construed *Stroud* narrowly.

In *State v. Boyce,* 52 Wn. App. 274, 758 P.2d 1017 (1988), the defendant was stopped after driving erratically at high speed. The defendant was arrested on an outstanding traffic warrant and transported from the scene. After the defendant's removal, the arresting officer searched the defendant's vehicle and found containers of cocaine. We held that *Stroud* did not permit a vehicle search incident to

an arrest once the defendant is physically removed from the scene of the arrest. *Boyce,* at 279. It is unclear, however, whether the search in *Boyce* would have been upheld had police detained the defendant at the scene until the search was completed. *See also State v. Stortroen,* 53 Wn. App. 654, 657, 769 P.2d 321 (1989) (declining to extend *Stroud* to noncustodial arrests).

■ Unlike *Boyce,* the search of Fore's vehicle was essentially contemporaneous with the arrest and occurred while Fore was still on the scene. Williams arrested Fore immediately after arriving at the market parking lot. Consequently, no significant amount of time elapsed between the arrest and the search. *See State v. Fladebo, supra; cf. United States v. Vasey,* 834 F.2d 782 (9th Cir. 1987) (search of vehicle occurred 30 to 45 minutes after defendant arrested, handcuffed, and placed in patrol car). Although neither Fore nor Reber was in the vehicle, both were sufficiently close to be immediately visible to the arriving officers. Moreover, both men had been occupants of the moving vehicle just a few minutes prior to the arrest. Finally, the vehicle itself was directly connected to the probable cause determination supporting the arrest.

Under these circumstances, we need not explore the outer boundaries of a permissible vehicle search incident to an arrest. The search of Fore's vehicle was sufficiently proximate, both temporally and physically, to the arrest to preclude any meaningful distinction between this case and *Stroud.*[1] *Cf. State v. Patterson,* 112 Wn.2d 731, 774 P.2d 10 (1989) (where not incident to an arrest, police may not search parked, immobile, and unoccupied vehicle without a warrant, even if probable cause exists for vehicle search, absent exigent circumstances). Consequently, the vehicle search was valid.

---

[1]The trial court's finding that Fore was not "in or near the vehicle" is too vague to be controlling.

The orders of suppression and dismissal are reversed; the matter is remanded for further proceedings consistent with this opinion.

COLEMAN, C.J., and FORREST, J., concur.

Review denied at 114 Wn.2d 1011 (1990).