191 P.3d 93 (2008)
STATE of Washington, Respondent,
v.
Coryell Levoi ADAMS, Appellant.
No. 60401-5-I.
Court of Appeals of Washington, Division 1.
September 2, 2008.
*94 Dana M. Lind, Nielsen Broman & Koch PLLC, Seattle, WA for Appellant.
Prosecuting Atty. King County, King Co. Pros./App. Unit Supervisor, Heidi Joanne Jacobsen-Watts, King County Prosecuting Attorney's Office, Seattle, WA, for Respondent.
ELLINGTON, J.
¶ 1 The police may search a vehicle incident to the lawful arrest of a recent occupant when that person is in' close temporal and spatial proximity to the vehicle at the time of the arrest. The arrestee may not preclude the search simply by locking the vehicle. In this case, Coryell Adams was arrested four to five feet from his car about one minute after being pulled over by a sheriffs deputy. Because the car remained in Adams' immediate control at the time of the arrest, the search of the vehicle was proper. We therefore affirm the court's decision to admit evidence discovered therein.

BACKGROUND
¶ 2 Shortly after midnight, King County Sheriffs Deputy Heather Volpe observed a man sitting in his parked car outside a casino on Aurora Avenue. Volpe checked the license plates and learned that an arrest warrant had been issued in Pierce County for the registered owner for driving with a revoked license. The driver matched the registered owner's description. Volpe turned around to initiate contact.
¶ 3 The driver quickly drove out of the parking lot onto Aurora. Volpe followed. Immediately and without signaling, the driver turned into a Taco Bell and parked. Volpe activated her emergency lights and pulled in about eight feet behind.
¶ 4 As Volpe got out of the patrol car, Adams stepped out of his vehicle, stood in the open swing of the driver's door and yelled at Volpe, challenging the stop as racial *95 profiling. Volpe repeatedly instructed Adams to get back in his car, but he ignored the command and continued yelling. Volpe stayed in the doorway of her patrol car and called for another unit to assist.
¶ 5 Adams slammed the car door, locked it, and stepped four to five feet away into the adjacent parking spot, where he stood screaming at Volpe, raising his arms in an agitated manner and ignoring repeated commands to return to his vehicle.
¶ 6 After a second officer arrived, Adams complied with instructions to turn around. Volpe put him in handcuffs and asked him to identify himself. Adams refused. Volpe frisked Adams and removed his keys and wallet, confirming his identity as the registered owner of the vehicle. Volpe arrested Adams on the warrant and for failing to provide information[1] and secured him in the back of her patrol car.
¶ 7 The other deputy took Adams' keys and unlocked his vehicle. Volpe searched the passenger compartment and found cocaine in a bag in the center console. Volpe arranged to impound the vehicle.
¶ 8 The State charged Adams with possession of cocaine.[2] Adams moved to suppress the cocaine as fruit of an illegal search. The trial court denied the motion, concluding that under Thornton v. United States,[3] Adams was a "recent occupant of his vehicle."[4] The court also concluded that "[a] driver cannot defeat a valid search incident to arrest by getting out of the car and locking the car door when he is seen in the car and driving it, when the arrest is made very close in time and space to the driving of the vehicle."[5]
¶ 9 Adams agreed to a stipulated bench trial and was convicted as charged.

DISCUSSION
¶ 10 We will affirm a refusal to suppress evidence if substantial evidence supports the court's findings of fact, and those findings support the court's conclusions of law.[6] We review the trial court's conclusions of law de novo.[7]
¶ 11 A warrantless search is unreasonable per se and can be justified only if it falls within one of the "jealously and carefully drawn" exceptions to the warrant requirement.[8] One of these exceptions is the search of an automobile pursuant to a lawful custodial arrest.[9] Under federal law, this exception justifies search of the entire passenger compartment, including any containers within it, even when the suspect has exited the vehicle before his or her arrest.[10] In State v. Stroud, our Supreme Court held that article 1, section 7 of the Washington Constitution does not permit the search of locked containers within the passenger compartment.[11]
¶ 12 The rationale for vehicle searches incident to arrest "rests in part on traditional justifications that a suspect might easily grab a weapon or destroy evidence."[12] Also important is the "the need for a clear rule, readily understood by police and not depending on differing estimates of what items were or were not within an arrestee's *96 reach at any particular moment."[13] Thus, Washington law permits automobile searches incident to arrest "immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car," even though, presumably, the exigencies justifying the search no longer exist.[14]
¶ 13 While the ability to search "does not depend on an arrestee being in the vehicle when police arrive," there must be "a close physical and temporal proximity between the arrest and the search."[15]
¶ 14 How close the arrestee must be to the vehicle has been the subject of several cases. Division Two of this court addressed the question in State v. Porter[16] and State v. Rathbun.[17] In Porter, the passenger was arrested 300 feet away.[18] The court held the search invalid because when the passenger compartment is not "within an arrestee's area of `immediate control,' Stroud does not apply."[19]
¶ 15 In Rathbun, the defendant saw police approaching and ran 40 to 60 feet away from the truck he was working on, hopping over a fence along the way.[20] The State contended the search was proper because the defendant had access to the truck immediately before his arrest and should not be able to avoid a search by running away.[21] Division Two disagreed: "If a suspect flees from a vehicle so that the vehicle is no longer within his or her immediate control at the time of arrest, the exigencies supporting a vehicle search incident to arrest no longer exist and there is no justification for the police to search the vehicle without first obtaining a warrant."[22]
¶ 16 Division Three of this court considered this question in State v. Quinlivan.[23] where a driver was stopped because he was not wearing a seat belt and was driving with a suspended license. After learning that his truck would be towed, Quinlivan got out of the truck, put the keys in his pocket, and sat down on the curb, where he was arrested.[24] The deputy testified Quinlivan was 6 to 12 feet away from the truck; Quinlivan testified it was more like 50 feet.[25] The court held that because Quinlivan no longer had access to the passenger compartment when he was arrested, the search was improper: "[T]he act of leaving the truck and locking it precludes the search incident to arrest authorized by the court in Stroud."[26] Though the court mentioned that Quinlivan had locked the truck, it is unclear whether and how that fact figured into the analysis.
¶ 17 In two other cases where the defendant locked his car before he was arrested, whether the police needed a warrant turned on whether the defendant had locked the door before or after he was seized.
*97 ¶ 18 In State v. Perea,[27] a police officer observed the defendant driving a vehicle, and knew that Perea's license had been suspended. As Perea parked in the front yard of his house, the officer pulled in behind and activated his emergency lights.[28] Perea looked at the officer and immediately stepped out of the car, closed and locked the door, and began walking toward his house.[29] The officer ordered Perea back to his vehicle, but Perea ignored the orders and continued walking.[30] When a second officer arrived, Perea was arrested and handcuffed.[31] Officers took his car keys, unlocked and searched the car, and found a loaded pistol.[32] Division Two found that Perea had not been seized when he locked the car doors because he had refused to submit to the officer's authority.[33] The court held that "because Perea lawfully exited and locked his car, the officers had no justification for entry into Perea's car to conduct a search incident to arrest."[34] The court distinguished its holding from cases "where the defendant locked his car after seizure (either directly or by a remote device)."[35]
¶ 19 In State v. O'Neill,[36] police made a traffic stop when O'Neill failed to signal. The officer handcuffed and arrested O'Neill for driving with a suspended license and placed him in the back of a patrol car.[37] The officer returned to the vehicle, finding it locked with the keys in the ignition.[38] He could see drug paraphernalia in plain view from the window, and called for an impound tow.[39] When the tow operator opened the door, the officer searched the truck and found cocaine.[40] O'Neill was then arrested for possessing a controlled substance.[41]
¶ 20 Division Three upheld this search, and distinguished Perea on its facts, finding that unlike Perea, O'Neill was inside his vehicle when he was seized (when he submitted to the officer's authority by pulling over, providing information, and stepping from the vehicle at the officer's request).[42] "Although Mr. O'Neill apparently locked his vehicle before or when he exited his truck, this does not prevent a valid search of the vehicle incident to arrest."[43]
¶ 21 Adams contends his case is like Perea and demands the same result.
¶ 22 We question the usefulness of Perea for two reasons. First, the analysis focuses on the arrestee's proximity to the vehicle at the time of seizure, rather than at the time of arrest. But officer safety and evidence preservation concerns incident to arrest provide the rationale for the search. It is the circumstances at the time of arrest, not seizure, that are relevant. Further, the Perea court's analysis as to when Perea was seized derives from California v. Hodari D.,[44] which our Supreme Court later explicitly rejected.[45] We decline to rely upon Perea.
¶ 23 Adams acknowledges Perea's infirmity, but nonetheless relies upon it to argue that warrantless searches of locked cars *98 are inconsistent with Stroud's limitation on searching locked containers within a vehicle incident to arrest.
¶ 24 The rationale for the Stroud court's exclusion of locked containers was twofold. First, an individual shows an increased expectation of privacy by locking a container. Second, the danger that the individual could access a weapon or destroy evidence inside a locked container within a vehicle is minimized: "The individual would have to spend time unlocking the container, during which time the officers have an opportunity to prevent the individual's access to the contents of the container."[46]
¶ 25 Adams contends locking the car doors minimizes the danger that the arrestee will gain access to a weapon or destructible evidence inside the car. We disagree. Whether using a mechanical key or a remote device, it takes only a second to unlock a car door (and, in many cases, one motion opens all doors at the same time). An arrestee could very swiftly gain access to any exposed weapon or evidence inside. This is not so when a locked container puts these items further out of reach. Further, the presence of a locked container inside a vehicle shows an increased expectation of privacy independent of the presence of police, whereas the act of locking a car when confronted by police has many connotations, of which privacy is only one.
¶ 26 We hold, therefore, that a vehicle locked in the presence of investigating officers is not equivalent to a locked container inside the vehicle.
¶ 27 Thus the only question here is whether Adams had "immediate control" or ready access to the passenger compartment of the car after he stepped away. We agree with the trial court that Adams was in close temporal and spatial proximity to his car when he was arrested. He was never more than four or five feet from his car, and was at all times closer to it than was the deputy.[47] He could have reached it quickly in a couple steps. And though he locked the doors, he retained the keys.
¶ 28 Additionally, unlike the defendants in Porter, Rathbun, and Quinlivan, Adams did not move away from the car. He stood nearby, haranguing the deputy. He was agitated and belligerent, and refused to comply with repeated commands to return to his vehicle or turn around to be handcuffed and frisked. The officer feared for her safety and called for backup. This invokes the officer safety rationale, further distinguishing this case from any upon which Adams relies.
¶ 29 Adams was a recent occupant in immediate control of his car at the time of the arrest. The search was justified.[48][49]
¶ 30 Affirmed.
WE CONCUR: SCHINDLER, C.J., and BECKER, J.
NOTES
[1] RCW 46.61.020.
[2] RCW 69.50.4013.
[3] 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004).
[4] Clerk's Papers at 22.
[5] Id. at 22-23.
[6] State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994); State v. Ross, 106 Wash.App. 876, 880, 26 P.3d 298 (2001).
[7] Ross, 106 Wash.App. at 880, 26 P.3d 298.
[8] Arkansas v. Sanders, 442 U.S. 753, 759, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979); State v. Houser, 95 Wash.2d 143, 149, 622 P.2d 1218 (1980).
[9] New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); State v. Stroud, 106 Wash.2d 144, 147, 720 P.2d 436 (1986).
[10] Belton, 453 U.S. at 457, 101 S.Ct. 2860; Thornton, 541 U.S. at 623-24, 124 S.Ct. 2127.
[11] 106 Wash.2d at 152, 720 P.2d 436.
[12] State v. Fore, 56 Wash.App. 339, 347, 783 P.2d 626 (1989); Belton, 453 U.S. at 457, 101 S.Ct. 2860.
[13] Thornton, 541 U.S. at 623, 124 S.Ct. 2127; see also Stroud, 106 Wash.2d at 151, 720 P.2d 436 ("We agree with the Supreme Court's decision to draw a clearer line to aid police enforcement.").
[14] Stroud, 106 Wash.2d at 152, 720 P.2d 436. We note that the Arizona Supreme Court recently held that when an arrestee is secured and is no longer a threat to officer safety or the preservation of evidence, the officer may not search the arrestee's vehicle incident to arrest. State v. Gant, 216 Ariz. 1, 162 P.3d 640 (Ariz.2007). The Arizona court noted that the decision in Thornton left that question unresolved, and agreed with Justice Scalia's concurrence where he stated that applying the Belton doctrine to justify a search of the car of a person handcuffed and confined in a police car "stretches [the doctrine] beyond its breaking point." Id. at 4 n. 2, 162 P.3d 640 (quoting Thornton, 541 U.S. at 625, 124 S.Ct. 2127) (Scalia, J., concurring) (alteration in original). The United States Supreme Court granted certiorari in February. Arizona v. Gant, ___ U.S. ___, 128 S.Ct 1443, 170 L.Ed.2d 274 (U.S. 2008).
[15] Fore, 56 Wash.App. at 347, 783 P.2d 626.
[16] 102 Wash.App. 327, 332, 6 P.3d 1245 (2000).
[17] 124 Wash.App. 372, 101 P.3d 119 (2004).
[18] Porter, 102 Wash.App. at 333, 6 P.3d 1245.
[19] Id.
[20] Rathbun, 124 Wash.App. at 375, 101 P.3d 119.
[21] Id. at 378-79, 101 P.3d 119.
[22] Id. at 380, 101 P.3d 119.
[23] 142 Wash.App. 960, 962, 176 P.3d 605 (2008).
[24] Id.
[25] Id. at 964, 176 P.3d 605.
[26] Id. at 962, 176 P.3d 605.
[27] 85 Wash.App. 339, 340-41, 932 P.2d 1258 (1997).
[28] Id. at 341, 932 P.2d 1258.
[29] Id.
[30] Id.
[31] Id.
[32] Id. at 340-41, 932 P.2d 1258.
[33] Id. at 344, 932 P.2d 1258.
[34] Id. at 340, 932 P.2d 1258.
[35] Id. at 345, 932 P.2d 1258.
[36] 110 Wash.App. 604, 606, 43 P.3d 522 (2002).
[37] Id.
[38] Id.
[39] Id. at 606-07, 43 P.3d 522.
[40] Id. at 607, 43 P.3d 522.
[41] Id.
[42] Id. at 611, 43 P.3d 522.
[43] Id.
[44] 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).
[45] State v. Young, 135 Wash.2d 498, 512, 957 P.2d 681 (1998) (rejecting the Hodari D mixed objective/subjective test for determining whether a seizure has occurred under article 1, section 7 of the Washington Constitution).
[46] Stroud, 106 Wash.2d at 152, 720 P.2d 436.
[47] Deputy Volpe testified she stood in the open swing of her patrol car, which was parked "about eight feet from the rear of his back bumper." Report of Proceedings (May 16, 2007) at 6.
[48] See Thornton, 541 U.S. at 624, 124 S.Ct. 2127, Fore, 56 Wash.App. at 347, 783 P.2d 626.
[49] The State contends the evidence was also admissible under the doctrine of inevitable discovery, because Volpe impounded Adams' car and would have discovered the cocaine during a routine inventory search. See State v. Richman, 85 Wash.App. 568, 933 P.2d 1088 (1997) (unlawfully obtained evidence admissible when State proves by preponderance of the evidence that it inevitably would have been discovered under proper and predictable investigatory procedures); State v. Houser, 95 Wash.2d 143, 622 P.2d 1218 (1980) (police may conduct a warrantless inventory search when a car is lawfully impounded unless the impoundment is mere pretext for investigatory search). The State failed to make this argument to the trial court, and consequently there are no factual findings to review. Given our disposition of the case on the search incident to arrest question, we need not reach the merits of the argument. We note, however, that in the absence of factual finding's on this issue, the State will rarely make the required showing on appeal.