IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79604-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| DOTSON, LETHEORY EARLACOSIE, | ) | UNPUBLISHED OPINION |
| DOB: 08/10/1969, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Letheory Earlacosie Dotson appeals his jury conviction for second degree burglary. He claims that officers lacked reasonable suspicion or probable cause to seize him. He also argues that the trial court erred in denying his Batson[1] challenge to the State's peremptory excusal of a juror based solely on the juror's age, that the court deprived him of his constitutional right to present a defense, and that insufficient evidence supports his conviction. Finally, Dotson seeks reversal of his conviction for instructional error, ineffective assistance of counsel, and cumulative error. Because officers had probable cause to seize and arrest Dotson, sufficient evidence supports his conviction for burglary in the second degree, and he shows no prejudicial error, we affirm.

FACTS

On February 19, 2018 at about 4:15 a.m., Lynnwood Police Department officers responded to an alarm at Sparta's Pizza and Pasta House. The officers

---

[1] Batson v. Kentucky, 476 U.S. 79, 106 S. Ct 1712, 90 L. Ed. 2d 69 (1986).

Citations and pin cites are based on the Westlaw online version of the cited material.

arrived within 10 minutes and saw the handle on the restaurant's back door "dangling" and loose with small dents and scrapes around it. Officers entered the restaurant and found the cash registers on the floor, unopened and still connected to computers by cables.

Officer Lindsay Carter and the restaurant's owner looked at surveillance video footage captured on Sparta's security cameras showing a person breaking into the building. Officer Carter broadcasted a description of the person as a "white male, gray hooded sweatshirt, gray pants, black gloves, black ski mask." She also took a screenshot of the person's image from the waist up and texted the photograph to "all the patrol phones." A K-9 unit arrived at the restaurant and tried to track the burglar. The tracking dog alerted most strongly in the northern direction from the restaurant but did not find a suspect.

Sergeant Allen Correa was patrolling the area and dispatched to Sparta's. He first set up a containment perimeter during the K-9 track but eventually drove north to the area where the dog reacted most strongly. At about 5:10 a.m., Sergeant Correa spotted Dotson walking along State Route 99 roughly four blocks north of Sparta's. Sergeant Correa compared Dotson with the photograph Officer Carter had texted of the person on the surveillance video. Although Dotson is a black man, he appeared "almost identical" to the photograph. Dotson was dressed in dark jeans with a gray hooded jacket, a balaclava-type black scarf, black gloves, and a black sport bag with a single strap that crossed his chest diagonally from his left shoulder. Sergeant Correa described it as "a pretty unusual outfit" with a distinctive logo on the bag strap.

2

Sergeant Correa stopped his patrol car and asked Dotson "what he was doing." Dotson said he was "coming from Everett." Sergeant Correa asked Dotson how he could be coming from Everett when he was in the photograph on Sergeant Correa's phone. Dotson "just shrugged his shoulders." Sergeant Correa then asked whether Dotson had "ever gone in a building at all, ever," to which Dotson responded, "You know my past."

Officer Carter and Officer Josh Magnussen arrived at the scene about a minute after Sergeant Correa contacted Dotson. Officer Carter believed Dotson matched "the exact description" of the surveillance footage, "except he was a black male." Officer Carter immediately read Dotson his Miranda[2] rights while Officer Magnussen placed Dotson in handcuffs.

After Dotson's arrest, Sergeant Correa returned to Sparta's to watch the surveillance video, "[j]ust to see if I could get any kind of additional factors that might help me make a determination on if I had probable cause." Sergeant Correa noticed the person in the video wore black gloves. Recalling that Dotson had gloves on, he returned to the scene to compare them with what he had seen on the video. The gloves matched. Sergeant Correa brought the owner of Sparta's to the scene as well "to get his opinion on if he thought it was the same person in the video." The owner "said something similar to that's for sure him."

Officer Carter took a photograph of Dotson as he appeared at the arrest scene. The officers also "ran" his name through their database and learned he was "Mr. Dotson." A search of Dotson's bag after his arrest revealed a six- to

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

eight-inch railroad spike. Rust covered most of the spike but the pointed end appeared recently damaged, "exposing shiny metal."

The State charged Dotson with one count of second degree burglary. Dotson moved to exclude police and witness "identification testimony" as a violation of his due process rights; suppress the railroad spike and all evidence obtained during his arrest, including photographs of him, under CrR 3.6; and suppress his statements to the police under CrR 3.5. The court denied the motions.[3] The court found that Sergeant Correa had "sufficient probable cause" to stop Dotson "and indeed for an arrest" and that Dotson's statements to Sergeant Correa were voluntary.[4] The court issued an oral ruling and asked the parties to prepare written findings of fact and conclusions of law.[5]

A different judge presided over Dotson's jury trial. While the parties had not yet presented written findings of fact and conclusions of law from the suppression hearing, they did not dispute the substance of the previous judge's evidentiary rulings.

During jury selection, Dotson objected to the State's peremptory excusal of juror 14. Dotson first argued the State's excusal stemmed from the juror's sexual orientation and precluded under GR 37. Dotson then amended his

---

[3] The court did grant Dotson's motion to suppress testimony that Dotson was "the suspect in the video" and to "just let the jurors review the video and make that determination."

[4] The court noted however that only the statement Dotson made about coming from Everett was admissible. Because "the timing is unclear" as to the other statements, the court ruled the trial judge would have to decide "whether they come in at all."

[5] The court stated, "I will make oral rulings today and I will be inviting counsel to set forth the Court's decision in writing at a later time."

4

objection, alleging the State based its peremptory challenge solely on the juror's age and precluded under Batson. The court overruled Dotson's objection.

At trial, the court admitted the screenshot that Officer Carter captured from the surveillance video (below left) as well as the photograph that she took of Dotson at the arrest scene (below right).[6]

 

Sergeant Correa testified about the similarity between the clothing worn by the person in the surveillance video and Dotson's clothing at the time of the arrest. He described Dotson as wearing "a very large coat with a — that I would call a balaclava, or ski mask, underneath that that was concealing a fair amount of his face. And he had some kind of a strap that went across his clothing that had two distinctive logos on it."

Dotson wanted his investigator to testify in rebuttal. Dotson claimed the investigator's testimony would refute Sergeant Correa and show bias because Sergeant Correa was "surprisingly combative" during a pretrial interview with the investigator. Defense counsel based his request on Sergeant Correa's refusal

---

[6] All of the photographic evidence was in color.

"to sign" and review his answers that the investigator wrote and "to be recorded despite the prosecutor being there." The court denied his request.

Before closing arguments, the court granted Dotson's request to instruct the jury as to the lesser included offense of criminal trespass in the first degree.[7] Dotson prepared and offered a packet of jury instructions consisting of an instruction defining "criminal trespass in the first degree," a "lesser crime" consideration instruction, and a criminal trespass in the first degree verdict form. Dotson did not include a "to convict" instruction for criminal trespass in the packet. The court used the jury instructions Dotson provided.

The jury convicted Dotson of burglary in the second degree. Dotson appeals.

## ANALYSIS

### Motion to Suppress

### A. Findings of Fact and Conclusions of Law

#### I. Timeliness

The trial court did not enter written findings of fact and conclusions of law memorializing its evidentiary rulings until after Dotson filed his opening brief on appeal. Dotson assigns error to several findings in his reply brief. The State argues that Dotson failed to assign error to the findings in his opening brief and that because the "parties agreed to the content of the written findings and conclusions before trial started," we should consider the findings unchallenged

---

[7] The State did not object to giving the lesser crime instructions.

6

on appeal, "regardless of when those findings and conclusions were actually filed." We disagree.

A trial court must enter written findings of fact and conclusions of law following a hearing on the admissibility of evidence. CrR 3.6(b). The court may submit written findings and conclusions while an appeal is pending only "if the defendant is not prejudiced by the belated entry of findings." State v. Cannon, 130 Wn.2d 313, 329, 922 P.2d 1293 (1996). We do not infer any prejudice from delay alone. State v. Head, 136 Wn.2d 619, 625, 964 P.2d 1187 (1998).

Here, Dotson's appellate attorney had no chance to review the court's findings for error before filing his opening brief. And the State offers no authority for its assertion that failure to object to written findings and conclusions of law at the trial court precludes assigning error to those findings on appeal. " 'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.' " State v. Logan, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

Precluding Dotson from assigning error to the court's findings in his reply would prejudice him as a result of the trial court's belated action. We review Dotson's assignments of error to the trial court's findings of fact as asserted in his reply brief.

II. Substantial Evidence

"We review challenged findings of fact for substantial evidence, that is, enough evidence to persuade a fair-minded rational person of the truth of the

finding. We treat unchallenged findings as verities on appeal." State v. Allen, 138 Wn. App. 463, 468, 157 P.3d 893 (2007).[8]

Dotson challenges six of the trial court's findings of fact:

6. At approximately 5:12 a.m., Sergeant Correa saw and contacted a suspect, ultimately identified as the defendant, approximately 4 blocks away from Sparta's Pizza.

7. Sergeant Correa believed the defendant was the person in the surveillance footage image because he was wearing the same clothing and same type of single-strap bag with identifying logos.

8. Officer Carter arrived to the defendant's location. She photographed the defendant at this location. (State's Exhibit 3).

9. State's Exhibit 3 does not illustrate what the defendant looked like at the time Sergeant Correa initially contacted him based on the fact that it was taken by Officer Carter later in law enforcement's contact with the defendant, but it is similar.

10. Sergeant Correa left the scene, reviewed the surveillance video with [the restaurant owner], and returned to the scene.

11. [The restaurant owner] went through an identification procedure with the law enforcement officers at the scene the defendant was contacted at and identified the suspect as the person he saw in the surveillance video.

Substantial evidence supports the trial court's findings. Sergeant Correa testified he contacted Dotson at 5:12 a.m., about four blocks north of Sparta's. He testified Dotson looked "almost identical" to the person in the photograph texted by Officer Carter. He said:

[Dotson] was wearing a pretty unusual outfit. The manner that he was wearing the outfit was exactly the same as what was on the video. There were a couple distinctive logos on the strap. And they were in the exact same place, the exact same position. And then the gloves also matched.

Officer Carter testified she responded to Sergeant Correa's dispatch that he was "out with a male." She arrived one minute later at 5:13 a.m., read Dotson

---

[8] Citation omitted.

his Miranda warnings, and photographed him.  Sergeant Correa returned to Sparta's, reviewed the surveillance video footage with help from the owner, and drove Sparta's owner back to the scene.  The owner positively identified Dotson as the man in the surveillance video at about 5:27 a.m.

### III.  Seizure

Dotson challenges the court's conclusions of law, arguing that "police did not have probable cause or a reasonable articulable suspicion" justifying his seizure.  We disagree.

We review a trial court's conclusions of law de novo.  State v. Acrey, 148 Wn.2d 738, 745, 64 P.3d 594 (2003).  Whether a person has been seized under the Fourth Amendment to the United States Constitution is a mixed question of law and fact.  State v. Thorn, 129 Wn.2d 347, 351, 917 P.2d 108 (1996), overruled on other grounds by State v. O'Neill, 148 Wn.2d 564, 62 P.3d 489 (2003).  An individual asserting a seizure in violation of article I, section 7 of the Washington Constitution bears the burden of proving that there was a seizure. State v. Young, 135 Wn.2d 498, 510, 957 P.2d 681 (1998).

A person is "seized" when an officer, by physical force or show of authority, restrains the person's freedom of movement such that a reasonable person would not believe he or she is free to leave.  O'Neill, 148 Wn.2d at 574. Not every seizure amounts to a formal arrest.  See State v. Thompson, 93 Wn.2d 838, 840, 613 P.2d 525 (1980).  An officer may seize and detain a person to investigate whether circumstances warrant an arrest.  Terry v. Ohio, 392 U.S. 1, 20-21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).  For such a detention, an officer

needs only a reasonable suspicion based on objective facts that the individual is involved in criminal conduct. Thompson, 93 Wn.2d at 840-41.

We use an objective standard to determine whether an encounter with police rises to the level a formal arrest. State v. Reichenbach, 153 Wn.2d 126, 135, 101 P.3d 80 (2004). That is, whether a reasonable detainee under the circumstances would consider himself under custodial arrest. State v. Radka, 120 Wn. App. 43, 49, 83 P.3d 1038 (2004); State v. Rivard, 131 Wn.2d 63, 75, 929 P.2d 413 (1997). An officer must have probable cause to believe the person has committed a crime to support a formal arrest. Dunaway v. New York, 442 U.S. 200, 213, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979).

We also use an objective standard to determine whether probable cause supports an arrest. State v. Gaddy, 152 Wn.2d 64, 70, 93 P.3d 872 (2004) (citing State v. Graham, 130 Wn.2d 711, 724, 927 P.2d 227 (1996)). Probable cause exists "when the arresting officer is aware of facts or circumstances" sufficient to cause a reasonable officer to believe a person committed a crime. Gaddy, 152 Wn.2d at 70. The burden is on the State to establish probable cause for an arrest. State v. Grande, 164 Wn.2d 135, 141, 187 P.3d 248 (2008). And we consider only the information available to officers at the time of arrest. Wong Sun v. United States, 371 U.S. 471, 481-82, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

The parties dispute when Sergeant Correa seized Dotson and when the seizure evolved into a custodial arrest. We need not resolve this dispute

because sufficient evidence supported probable cause to arrest Dotson for burglary in the second degree when Sergeant Correa first contacted him.

When Sergeant Correa first saw Dotson, he knew that a male suspect had entered Sparta's just after 4:00 a.m. without permission. He knew the person broke the outer door handle, rummaged through drawers, and tried to remove cash registers. Sergeant Correa also had a screenshot of the burglar inside the restaurant wearing a large gray jacket with a hood, a black balaclava-type head and neck cover, and carrying a black logoed sport bag strapped diagonally from his left shoulder across his chest. When Sergeant Correa first noticed Dotson on the sidewalk, he saw that Dotson wore a large gray jacket with a hood, black head and neck scarf that left only his nose and eyes exposed, and carried an identical sport bag strapped diagonally across his chest from his left shoulder. And Dotson was walking only four blocks north of Sparta's, the same direction that the tracking dog alerted most strongly.[9]

Dotson argues Sergeant Correa did not have probable cause to arrest him because Officer Carter described the person in the surveillance video as a white male wearing gray pants. And Dotson points out that he is a black male who was wearing blue jeans at the time. But probable cause is not a technical inquiry. State v. Perez, 5 Wn. App. 2d 867, 872, 428 P.3d 1251, remanded, 193 Wn.2d 1008, 439 P.3d 1075 (2019). Instead, it rests on " 'the totality of facts and

---

[9] The trial court's findings state the suspect was "wearing the same clothing and same type of single-strap bag with identifying logos" as Dotson. The court concluded that Dotson's appearance "and the overall surrounding circumstances of location and time of day" made the identification sufficiently individualized. See State v. Weyand, 188 Wn.2d 804, 811-12, 399 P.3d 530 (2017) (an officer must have a reasonable suspicion of criminal activity "individualized to the person being stopped").

circumstances within the officer's knowledge at the time of the arrest.' " Perez, 5 Wn. App. 2d at 872 (quoting State v. Fricks, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979)). Here, the similarities between the screenshot photograph of the suspect and Dotson's appearance, combined with his proximity in time and location to the crime, were enough to support a reasonable belief that Dotson committed the burglary.

Dotson also argues that probable cause did not support his arrest because there were possible innocent explanations for his appearance and presence in the area. He claims he was wearing common and appropriate clothing for the season and near bus stops on a busy arterial, suggesting he could have been waiting for a bus. But probable cause is not negated just because it is also possible to "imagine an innocent explanation for observed activities." State v. Fore, 56 Wn. App. 339, 344, 783 P.2d 626 (1989) (citing 1 Wayne R. LaFave, Search and Seizure § 3.2(e), at 595 (2d ed. 1987)).

Finally, Dotson compares his arrest to those of individuals arrested near "drug house[s]" to suggest that Sergeant Correa should not have construed his presence near the burglary scene as suspicious. His comparison is inapt. Dotson cites cases such as State v. Doughty, 170 Wn.2d 57, 62, 239 P.3d 573 (2010), that consider whether officers who saw a defendant enter and leave a known "drug house" had probable cause to believe that a crime had been committed. While it is true that " 'mere proximity' " to a known "drug house" may be insufficient to establish that a person is engaged in criminal activity;[10] here,

---

[10] Doughty, 470 Wn. App. at 62, 64 (quoting Thompson, 93 Wn.2d at 841).

Sergeant Correa did not stop Dotson only because of his location near the scene of the crime. Officers had substantial evidence of the facts and circumstances surrounding the burglary, including an actual image of the suspect, and were objectively concerned only with identifying the person who committed the crime.[11]

The trial court did not err in denying Dotson's motion to suppress evidence.

### Batson Challenge

Dotson claims the trial court erred in denying his challenge under Batson to the State's peremptory excusal of juror 14 "solely based on his age." We disagree.

We review a challenge under Batson for "clear error" and defer to the trial court in as much as "its rulings are factual." State v. Jefferson, 192 Wn.2d 225, 232, 429 P.3d 467 (2018) (citing State v. Saintcalle, 178 Wn.2d 34, 41, 309 P.3d 326 (2013), abrogated on other grounds by City of Seattle v. Erickson, 188 Wn.2d 721, 398 P.3d 1124 (2017)).[12] " '[T]he determination of the trial judge is accorded great deference on appeal, and will be upheld unless clearly

---

[11] Dotson also argues that Sergeant Correa must not have had probable cause to arrest him because Sergeant Correa returned to the restaurant to view the surveillance video and "determin[e] . . . if" he had probable cause. But we determine probable cause by objective facts, not the subjective opinion of an officer. State v. Huff, 64 Wn. App. 641, 645, 826 P.2d 698 (1992).

[12] Dotson argues for the first time on appeal that the exclusion of juror 14 affected his right to a jury composed of a fair cross section of the community. See In re Pers. Restraint Petition of Yates, 177 Wn.2d 1, 19, 296 P.3d 872 (2013); Taylor v. Louisiana, 419 U.S. 522, 526-27, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975). Because Dotson did not object to the venire below, the record is insufficient to address Dotson's claim. We decline to reach this argument. RAP 2.5(a).

erroneous.' " State v. Hicks, 163 Wn.2d 477, 486, 181 P.3d 831 (2008)[13] (quoting State v. Luvene, 127 Wn.2d 690, 699, 903 P.2d 960 (1995)).

Defendants and jurors are entitled to a jury selection process free from racial animus. Batson, 476 U.S. at 86-87. A party raising a challenge to a peremptory excusal under Batson must "first demonstrate that the struck juror is a member of a 'cognizable [constitutionally protected] group.' " Erickson, 188 Wn.2d at 732 (quoting Batson, 476 U.S. at 96).[14] Then the objecting party must make a prima facie showing that the challenge was exercised for a discriminatory purpose. Erickson, 188 Wn.2d at 726. If the objecting party makes a prima facie showing, the burden shifts to the party exercising the peremptory excusal to provide an adequate, nondiscriminatory justification for the strike. Erickson, 188 Wn.2d at 726-27. The court must then weigh all of the relevant circumstances and determine whether the party made the excusal for a discriminatory purpose. Erickson, 188 Wn.2d at 727 (citing Johnson v. California, 545 U.S. 162, 168, 125 S. Ct. 2410, 162 L. Ed. 2d 129 (2005)).

Dotson's attorney first objected to the State excusing juror 14 under GR 37, alleging juror's sexual orientation motivated the excusal. But the trial court pointed out that GR 37 covers only excusals "based on race or ethnicity." The court also noted that the jury questionnaire did not reflect juror 14's sexual orientation nor did his responses during voir dire. Dotson's attorney then

---

[13] Internal quotation marks omitted.

[14] See also State v. Burch, 65 Wn. App. 828, 834, 830 P.2d 357 (1992) (extending racial discrimination during jury selection in Batson to gender-based discrimination).

changed his initial objection to argue the excusal "might be age discrimination" based on the juror's young age and prohibited under Batson.[15]

Dotson offers no authority that age is a cognizable protected classification under Batson. RAP 10.3(a)(6). Indeed, Dotson concedes that "age is not, as a general matter, a prohibited reason for excluding a juror with a peremptory challenge." Again, we need not " 'search out authorities' " and may assume that counsel " 'found none.' " Logan, 102 Wn. App. at 911 n.1 (quoting DeHeer, 60 Wn.2d at 126).

At any rate, Dotson fails to make a prima facie showing of purposeful discrimination. He suggests that the State engaged in a pattern of excusing "young" jurors because it also excused juror 8 who was 20 years old. But Dotson offers no evidence that the prosecutor engaged in disparate questioning of "young" jurors, nor does he show how many "young" jurors sat on the venire or how many remained after the State's peremptory excusals. Dotson's allegation that a discriminatory purpose motivated the State's preemptory excusal of juror 14 fails under Batson. The trial court did not "clear[ly] err" in denying his challenge. Jefferson, 192 Wn.2d at 232; Hicks, 163 Wn.2d at 486.

<u>Constitutional Right to Present a Defense</u>

Dotson argues the trial court interfered with his constitutional right to present a defense by precluding his investigator from testifying to show Sergeant Correa's "bias." We disagree.

---

[15] Because Dotson's challenge rested on "age discrimination," citation to cases such as SmithKline Beecham Corp. v. Abbot Laboratories, 740 F.3d 471, 480-81 (9th Cir. 2014) (extending Batson to peremptory challenges based on sexual orientation), is unhelpful.

Criminal defendants have a constitutional right to present a defense. U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, §§ 3, 22; Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). We apply a two-part analysis to determine whether the exclusion of testimonial evidence violates the right. State v. Arndt, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019) (citing State v. Clark, 187 Wn.2d 641, 648-56, 389 P.3d 462 (2017)). First, we review the trial court's evidentiary rulings for an abuse of discretion. Arndt, 194 Wn.2d at 797. Then, we consider de novo whether those rulings deprived the defendant of his constitutional right to present a defense. Arndt, 194 Wn.2d at 797-98.

Questions of relevancy and admissibility of testimonial evidence are within the sound discretion of the trial court. In re Welfare of Shope, 23 Wn. App. 567, 569, 596 P.2d 1361 (1979); Roper v. Mabry, 15 Wn. App. 819, 822-23, 551 P.2d 1381 (1976); State v. Temple, 5 Wn. App. 1, 4-5, 485 P.2d 93 (1971). We will reverse a trial court's rulings on those issues only if there is "a reasonable possibility that the testimony would have changed the outcome of trial." State v. Fankhouser, 133 Wn. App. 689, 695, 138 P.3d 140 (2006); State v. Aguirre, 168 Wn.2d 350, 361, 229 P.3d 669 (2010).

A defendant's right to present a defense is subject to " 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " State v. Blair, 3 Wn. App. 2d 343, 350, 415 P.3d 1232 (2018) (quoting Chambers, 410 U.S. at 302).

> "The rule is firmly established in this state that a witness cannot be impeached by showing the falsity of his testimony

16

concerning facts collateral to the issue. . . .
    "The test as to whether a matter is material or collateral . . . is whether the cross-examining party is entitled to prove it in support of his case."

State v. Putzell, 40 Wn.2d 174, 183, 242 P.2d 180 (1952)[16] (quoting State v. Johnson, 192 Wash. 467, 471-72, 73 P.3d 1342 (1937)).

    Although the law allows cross-examination into matters which will affect the credibility of a witness by showing bias, ill will, interest or corruption (3 [James Henry Wigmore, Evidence § 943 (3d ed. 1940)]), the evidence sought to be elicited must be material and relevant to the matters sought to be proved and specific enough to be free from vagueness; otherwise, all manner of argumentative and speculative evidence will be adduced.

State v. Jones, 67 Wn.2d 506, 512, 408 P.2d 247 (1965).

Here, the trial court precluded testimony from Dotson's investigator about Sergeant Correa's conduct during a pretrial interview. The investigator would have testified that Sergeant Correa refused to be recorded or to sign a transcript of the interview. Dotson also wanted the investigator to rebut Sergeant Correa's testimony that she "misquoted me five or six times" during the interview. Dotson contends that if he "had been allowed to present evidence of Sergeant Correa's uncooperative attitude and bias against the defense, it would have called into question the rest of Sergeant Correa's testimony, including his decision to seize Dotson in the first place." He claims that since Sergeant Correa was "the State's chief prosecution witness," the inability to show bias was particularly prejudicial.

But Sergeant Correa testified that he refused to be recorded or sign a written transcript of the defense interview. And the trial court correctly determined that a dispute about whether the investigator misquoted Sergeant

---

[16] Citations omitted.

Correa during the interview was collateral to any material issue at trial. The trial court did not abuse its discretion when it precluded the investigator's testimony.

### Sufficiency of Evidence

Dotson argues sufficient evidence does not support the jury's determination that he "was the same person depicted in the surveillance video from inside the restaurant."

When reviewing a challenge to the sufficiency of the evidence, we must determine whether, after examining the facts in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. State v. Joy, 121 Wn.2d 333, 338-39, 851 P.2d 654 (1993); State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Such a challenge admits the truth of the State's evidence and all reasonable inferences from it. Salinas, 119 Wn.2d at 201. Circumstantial evidence is as equally reliable as direct evidence. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Identity is a question of fact for the jury. State v. Hill, 83 Wn.2d 558, 560, 520 P.2d 618 (1974). "[A]ny relevant fact, either direct or circumstantial, which would convince or tend to convince a person of ordinary judgment, in carrying on his everyday affairs, of the identity of a person should be received and evaluated." Hill, 83 Wn.2d at 560 (citing 1 H. Underhill, Criminal Evidence § 125 (5th ed. P. Herrick 1956, Supp. 1970)).

Here, the jury viewed Sparta's surveillance video and photographs of Dotson taken at the time of his arrest. The jury then had the chance to compare

those images to one another and to Dotson in the courtroom. And Officer Magnussen testified that he arrested the suspect near the restaurant and later confirmed at the jail the identity of that person as Letheory Dotson.

Still, Dotson argues that the evidence is insufficient to show identity because no witnesses testified that he "was the same person depicted in the surveillance video from inside the restaurant" and "no one ever identified [him] as the Letheory Dotson they were talking about." Citing State v. Huber, 129 Wn. App. 499, 119 P.3d 388 (2005), Dotson argues that "identity of names" is not sufficient to show that he was the person arrested at the scene. But Huber addresses evidence of identity "when criminal liability depends on the accused's being the person to whom a document pertains." Huber, 129 Wn. App. at 502. The jury here was not tasked with determining whether Dotson was the same person named in a document.

And while it is true that none of the witnesses at trial identified Dotson as the person in the surveillance video, this is because Dotson himself moved in limine to preclude the State's witnesses from testifying that he was the person in the video. Instead, he asked the court to "let the jurors review the video and make that determination."

Viewing the evidence in the light most favorable to the State, a reasonable jury could find that Dotson was the person depicted in the surveillance video and arrested near the restaurant. We reject his sufficiency of evidence challenge.

Instructional Error

Dotson argues his conviction should be reversed because the court did not include a "to convict" instruction for the lesser included criminal trespass charge. The State argues that Dotson invited any error in failing to give the instruction because defense counsel requested, prepared, and offered the instructions on the lesser included charge of criminal trespass. We agree with the State.

We review the sufficiency of jury instructions de novo. State v. Clark-El, 196 Wn. App. 614, 619, 384 P.3d 627 (2016) (citing State v. Brooks, 142 Wn. App. 842, 848, 176 P.3d 549 (2008)). Instructions are sufficient if they permit each party to argue their side of the case, are not misleading, and when read as a whole, properly inform the jury of the applicable law. State v. Mark, 94 Wn.2d 520, 526, 618 P.2d 73 (1980). The to-convict instruction carries special weight because it gives the jury a " 'yardstick' " by which to measure guilt or innocence. State v. Mills, 154 Wn.2d 1, 6, 109 P.3d 415 (2005).

The invited error doctrine prohibits a party from setting up an error at trial and then challenging that error on appeal. In re Pers. Restraint of Coggin, 182 Wn.2d 115, 119, 340 P.3d 810 (2014). To determine whether Dotson invited error, we consider whether he affirmatively assented to the error, materially contributed to it, or benefited from it. Coggin, 182 Wn.2d at 119. We strictly enforce the invited error doctrine no matter if the error was intentional. State v. Ortiz-Triana, 193 Wn. App. 769, 777, 373 P.3d 335 (2016).

Courts have enforced invited error when a defendant proposes jury instructions that do not form a complete and accurate statement of the law. In State v. Studd, 137 Wn.2d 533, 538, 973 P.2d 1049 (1999), six defendants all proposed instructions that erroneously stated the law of self-defense. Some also proposed instructions that remedied the error. Studd, 137 Wn.2d at 538-39. While the error was of constitutional magnitude, our Supreme Court held that those defendants who proposed the erroneous instruction without seeking to add a remedial instruction had invited the error and could not then complain on appeal. Studd, 137 Wn.2d at 546-47. And in State v. Corbett, 158 Wn. App. 576, 591, 242 P.3d 52 (2010), Division Two of this court held that when a defendant proposes instructions but does not include a unanimity instruction, the invited error doctrine precludes him from appealing the trial court's failure to give such an instruction.

Here, defense counsel proposed jury instructions as to the lesser included charge of criminal trespass in the first degree but did not provide a to-convict instruction. Counsel drafted the instructions and offered them to the court. He then agreed to the proposed instructions when presented by the court in final form. Defense counsel actively participated in and materially contributed to the defective instructions. Invited error bars Dotson from now complaining for the first time on appeal that his proposed instructions did not form an accurate and complete statement of the law.

Ineffective Assistance of Counsel

Dotson asserts his counsel was ineffective by neglecting to offer the criminal trespass to-convict instruction. The State argues that Dotson was not prejudiced by the error because the court properly instructed the jurors not to reach the lesser included offense if they convicted Dotson of the burglary charge. We agree with the State.

We may review deficient jury instructions where invited error resulted from ineffective assistance of counsel. State v. Rodriguez, 121 Wn. App. 180, 184, 87 P.3d 1201 (2004) (citing State v. Aho, 137 Wn.2d 736, 744-45, 975 P.2d 512 (1999)). To determine whether counsel was ineffective, we apply the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficiency prejudiced him. Strickland, 466 U.S. at 687. A defendant is prejudiced if " 'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.' " State v. Grier, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011) (quoting State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). We need not "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

Here, the court's instructions to the jury omitted the to-convict instruction for the lesser included offense of criminal trespass in the first degree. But instruction 11 directed the jury to consider the lesser included offense of criminal trespass only if it "was not satisfied beyond a reasonable doubt" as to Dotson's guilt on the burglary charge. And jury instruction 14 stated, in pertinent part:

> When completing the verdict forms A and B, you will first consider the crime of burglary in the second degree as charged. If you unanimously agree on a verdict, you must fill in the blank provided in verdict form A the words "not guilty" or the word "guilty," according to the decision you reach. If you cannot agree on a verdict, do not fill in the blank provided in Verdict Form A.
> If you find the defendant guilty on verdict form A, do not use verdict form B.

The jury wrote the word "guilty" on verdict form A for the burglary charge and left verdict form B for the lesser crime of criminal trespass blank.

We presume the jury followed the court's instructions absent evidence to the contrary. State v. Montgomery, 163 Wn.2d 577, 596, 183 P.3d 267 (2008). Because the court properly instructed the jury on how to proceed if it did not reach a verdict on the burglary charge and the jury left blank the verdict form for the lesser included offense of criminal trespass, we presume the jury had no doubt that Dotson committed burglary in the second degree and did not reach the instructions for the lesser crime of criminal trespass. Dotson fails to show that including the to-convict instruction for criminal trespass in the first degree would have led to a different outcome.

Cumulative Error

Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is unfair. State v. Emery, 174

23

Wn.2d 741, 766, 278 P.3d 653 (2012) (citing In re Pers. Restraint of Lord, 123 Wn.2d 296, 332, 868 P.2d 835 (1994)). Since no individual error undermined Dotson's trial, his cumulative error claim fails.

Because probable cause supports Dotson's arrest, sufficient evidence supports his conviction for burglary in the second degree, and Dotson shows no prejudicial error, we affirm.

_____
Brennan, J

WE CONCUR:

_____        _____
                                       Andrus, A.C.J.